UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

F I L E D

OCT 16 2025

CLERK'S OFFICE
DETROIT

U.S.A

Plaintiff,

vs.

Ibrahim Ammour

Defendant(s).

Case No. 23-CR-20062

Judicial Officer: Hon. Judge Goldsmith

Politics + Request for Forensic Exam
undermine defense

I opt to Present my self
Request for Judicial review

whether Jimmo, or Glind the blind Amputee
is a civil or Criminal. No CMS Reimbursement
For visits (services) above 5 visits whether patient
improved, or patient did not improve.
when visits provided above 5 visit are provided only
for Ethical obligation. Even when not provided.
No change of pain payment. providing visits
above 5 only add additional financial Burden. and
only increase overhead cost.

Politics + Request for
Forensic Exam. undermine defense

unprecedented argument at court
Proceedings. Sammour protest + posting
Photos protesting

Mike. if trump wins, there will be a max edoxus
political views, or voting preference could
Provoke Retaliation or abandonment
more Details attached

_____
Signature of Filer

Ibrahim Sammour
**Printed Name**

Date: 10/16/2025

13340 Leonard st Apt 108
**Street Address**

Dearborn MI. 48126
**City, State, Zip Code**

313 377 9370
**Telephone Number**

Urgent Request for Judicial Review of Blatant Constitutional Infringement and Unprecedented Argument in Court Proceedings, and Request to Change Counsel, or <u>I opt to represent MYSLEF</u>.

From: ratajmi@aol.com <ratajmi@aol.com> To: Ibrahim Sammour <abesammour@yahoo.com> Sent: Thursday, August 8, 2024 at 08:20:06 PM EDT Subject: Re: Mr. Mike

If Trump wins, there will be a mass exodus.

Statement on Constitutional Violations and Political Bias by Defense Counsel

It is evident that attorneys Mike and Leanna are aware of the constitutional violations they committed when they invoked an unprecedented argument in federal court to request a forensic competency exam. Their justification relied on my protest activity and the use of protest-related photos, which are protected under the First Amendment. This misuse of constitutionally protected expression to question my mental fitness is not only legally unfounded — it is a direct infringement on my civil rights.

Additionally, I received an email from Mike on August 8, 2024, stating:
"If Trump wins, there will be a mass exodus."

This statement, sent directly to me, constitutes a political threat. It implies that my political views or voting preferences could provoke retaliation or abandonment. This is especially troubling given that both attorneys have publicly claimed that their political persuasion has "absolutely nothing to do" with their constitutional duties as defense counsel. Their own communications contradict this claim.

The phrase "mass exodus" in this context suggests that political outcomes — specifically the 2024 presidential election — are influencing their behavior and decisions in my case. This raises serious concerns about bias, retaliation, and the weaponization of political ideology in a criminal defense setting.

Their actions reflect:

- Constitutional infringement through misuse of protest evidence
- Political coercion through direct email threats
- Misrepresentation of neutrality in their professional obligations
- Unethical conduct in pursuing a forensic exam based on protected speech

These behaviors undermine the integrity of the proceedings and violate my rights under the First, Sixth, and Fourteenth Amendments. I respectfully request that the Court consider these facts in full before allowing any further action — including the forensic exam — to proceed under the direction of counsel whose conduct is now under judicial review.

Statement on Counsel's Misconduct, Bias, and Evidentiary Admissions
Background: Jimmo v. Sebelius and CMS's Unlawful Denial Mechanism

Glenda Jimmo, a blind amputee, was <u>denied Medicare coverage</u> because her condition was deemed "unlikely to improve." CMS applied the so-called <u>Improvement Standard</u>, which required patients to demonstrate potential for improvement in order to qualify for skilled care. This standard was not based on law, but on internal CMS policy — and it led to widespread denial of coverage for patients who needed care to maintain their condition or prevent deterioration.

Importantly, CMS denied payment even in cases where patients had improved, unlawfully Neither REIMBURSEMENT, unlawfully Nor credit for visits(services) made patient improved, just added more financial burden, but only increased overhead cost. More details inside , or were receiving medically necessary services. The Jimmo case revealed that CMS's mechanism for denying payment was unlawful, and the federal court settlement in 2013 forced CMS to revise its guidance. The new standard clarified that improvement is not required — coverage depends on medical necessity(Dr,s orders), not prognosis.

Jimmo's case was publicly posted, protested, and published, and it became a landmark example of how patients can challenge CMS's unlawful practices through civil litigation.

mckee, prather

McKee and Prather are two important cases that, like Jimmo, challenged CMS's unlawful denial of Medicare payments — but ours situation is even more troubling because instead of being compensated, we're being criminally charged under the same flawed standards. Despite CMS using the same flawed standards that courts have previously rejected.

McKee v. Azar (2020)
Issue: CMS denied home health coverage to Ms. McKee, a Medicare beneficiary with multiple

chronic conditions, claiming her condition was "stable" and didn't require skilled care.

Outcome: The court found this denial violated the Jimmo settlement, which clarified that Medicare must cover skilled care needed to maintain a patient's condition — not just improve it.

Significance: CMS was forced to reverse its denial and provide full coverage. McKee's case reaffirmed that "stability" is not a lawful reason to deny care.

protest activity, like Jimmo's, is being used against us — not as a basis for reform, but as justification for a forensic exam and criminal proceedings.

This contrast highlights a constitutional and procedural failure. If CMS's mechanisms were unlawful in Jimmo's case, they are equally unlawful when applied to us. The difference in treatment — civil redress for some, criminal prosecution for others — demands judicial scrutiny

I further submit that the unprecedented argumentadvanced by my appointed counsel — specifically their use of my constitutionally protected protest activity, including photos of me protesting, as justification for a forensic exam — constitutes a serious violation of my First Amendment rights, a distortion of legal standards, and an admission that they misled the Court.

In addition to their filings, their email communicationsreveal a clear pattern of bias, misconduct, and misrepresentation. In those emails, they repeatedly characterize my legal defense as "ridiculous," not based on any legal analysis, but as a means to justify their refusal to act on my requests. These statements are not only inappropriate — they are admissions that they are unwilling to present arguments grounded in fact and law simply because they personally disagree with them.

Ironically, their dismissive language and refusal to engage with the legal merits of my defense serve as further evidence that my defense is valid. Their need to label it "ridiculous" — rather than refute it with legal reasoning — underscores that they are denying facts that are inconvenient, not incorrect. Their conduct has misled the Court and obstructed my ability to present a full and fair defense.

They also refused to address, misrepresented, and misled the Court regarding the $5 million issue, which is central to the factual and legal foundation of this case. Their failure to engage with this matter — despite its significance — further demonstrates their unwillingness to advocate effectively and truthfully on my behalf.

These communications and arguments are not just examples of poor advocacy — they are evidentiary admissions that my counsel has:

- Misrepresented the legal standing of Jimmo v. Sebelius
- Denied the relevance of CMS's rejected sub-regulatory guidance
- Refused to correct the record despite knowing the facts
- Attempted to discredit my defense through personal bias rather than legal reasoning
- Advanced an unconstitutional and misleading argument that equates protest activity with incompetence
- Ignored and misrepresented the $5 million issue, misleading the Court on a critical factual matter

This pattern of conduct further supports my request to proceed pro se and to have Mike and Leanna formally removed as counsel.

Urgent Request for Judicial Review of Blatant Constitutional Infringement and Unprecedented Argument in Court Proceedings, and Request to Change Counsel, or  I opt to represent MYSLEF

I respectfully bring to the Court's attention that my current counsel, Leanna and Mike, have refused to request a change to the reporting date for my forensic exam. Their refusal is not based on any legal limitation, but rather on their unwillingness to act, as reflected in their statement:

"Your reporting date is not being changed."

In addition, they have refused my prior request to correct the record for accuracy. Specifically, they declined to clarify misleading statements regarding the Jimmo case, which is a published decision — contrary to their claim that it is not.  misled the Court regarding the $5 million issue, which I explained in detail in relation

to Jimmo and other cases, as well as the RN SOC, employment restrictions, and the judiciary's condemnation of CMS for unlawfully tying RN SOC to a substantive change in payment policy. This was done through CMS's unlawful additional requirements in the otherwise lawful Face-to-Face (F2F) encounter, which indirectly invalidates physician certification for home health care — a matter that raises a clear question of law. I raised these concerns with Mike multiple times, and in my formal request to Judge McMillion seeking their removal as counsel. Their continued refusal to engage with these issues reflects a pattern of disregard for my concerns and a failure to advocate on my behalf.

This refusal is especially troubling given that I have a pending hearing before Judge McMillion — currently scheduled for November 12, 2025 — to determine whether Mike and Leanna should be removed as my attorneys. My request is based on the fact that they advanced an unprecedented and constitutionally troubling argument in federal court filings. While I am not challenging the authority of the Court itself, I argue that the forensic exam order — which was based on their invocation of protest activity as justification — should be reconsidered and removed, as it was grounded in a flawed and misleading premise. The exam was initiated by counsel whose conduct I have formally asked the Court to review. Although they may claim they do not control the timing, they are fully aware that the Court has the power to do so. Their refusal to even request a scheduling adjustment reflects a lack of advocacy and undermines my confidence in their representation.

In their filings, Mike and Leanna used my protest activity — including photos of me protesting — as justification for a forensic competency exam. The mere act of invoking protest and submitting protest-related images as evidence is an improper and legally indefensible tactic. It mischaracterizes protected First Amendment activity as grounds for questioning mental competence, which is both ethically unacceptable and a violation of my constitutional rights. This approach misled the Court and introduced an unprecedented argument into the proceedings that should not be allowed to stand.

This issue has already been brought to the attention of Judge McMillion through my formal request for judicial review and for the removal of Mike and Leanna as counsel. While the Court has not yet ruled on that request, their refusal to seek a change in the forensic exam date raises additional concerns. It suggests they may recognize that their actions — particularly the use of constitutionally protected protest activity to justify a forensic exam — could be viewed as improper or biased. Their continued unwillingness to cooperate with a basic scheduling request further erodes my confidence in their ability to represent me effectively, ethically, and in good faith.

There is already a clear and irreparable breakdown in the attorney-client relationship. If Judge Goldsmith will not allow me to have another attorney under these circumstances, then I must respectfully state that I am being denied meaningful representation — and my attorneys are not helping me in any way.

I respectfully ask this Honorable Court to:

- Reconsider and remove the forensic exam order, as it was based on a misleading and unprecedented argument that infringes on constitutional rights.
- Grant my request to remove Mike and Leanna as attorneys, based on their unconstitutional and unethical conduct.

From: Leanna Belcher <leanna@belcherlawfirm.com>
To: Ibrahim Sammour <abesammour@yahoo.com>; Michael Rataj <ratajmi@aol.com>
Sent: Tuesday, October 14, 2025 at 07:49:12 PM EDT
Subject: Re: ok

Your reporting date is not being changed.
-
From: ratajmi@aol.com <ratajmi@aol.com>
To: Ibrahim Sammour <abesammour@yahoo.com>
Cc: leanna@belcherlawfirm.com<leanna@belcherlawfirm.com>
Sent: Wednesday, October 15, 2025 at 09:19:39 AM EDT
Subject: Re: ok


There is no breakdown in the attorney-client relationship.  My refusal to correct the record is based on the fact that there is nothing to correct.  We are trying to help you.  Just because we don't do what you want us to do is not a breakdown.  You are not entitled to request court-appointed counsel just because we will not advance a ridiculous

argument which is no defense to Medicare fraud.  Moreover, the court has told you that you are not getting another court-appointed attorney. You do have the option to either hire your own attorney at your expense or you can opt to represent yourself, which is not a wise option. I will let the government know that you will self-report on November 11, 2025.  We will provide you with the address and the time you are to report on the 11th.

On Wednesday, October 15, 2025 at 09:02:24 AM EDT, Ibrahim Sammour <abesammour@yahoo.com> wrote:


I told you when we were Infront of the court om Friday 10/03/2025  I will be self-report, and you said you will tell them, so you know that already,
Mike, you know there is already breakdown in the attorney-client relationship. either you refuse my requests as I asked you before to correct the accuracy of the record when you misled the court, details provided in what I filed with judge McMillion, and you are aware of , and you are refusing to ask the court to charge the reporting date conflict with the hearing with judge McMillion you already know as I told you in my emails couple days ago, ill ask the 2nd attorney to remove you based on unprecedented argument in court proceedings,   if judge goldsmith will not allow me to have another attorney, you are not helping me any way.


----- Forwarded Message -----
From: Ibrahim Sammour <abesammour@yahoo.com>
To: ratajmi@aol.com <ratajmi@aol.com>; Leanna Belcher <leanna@gonekbelcherlaw.com>; donnini@butzel.com <donnini@butzel.com>
Sent: Wednesday, October 15, 2025 at 09:50:02 AM EDT
Subject: Re: ok


    your limited, and unexplained communication are indicated its was  breakdown in the attorney-client relationship months ago  ,but now already a clear and irreparable breakdown in the attorney-client relationship. If Judge Goldsmith will not allow me to have another attorney under these circumstances, then I must respectfully state that I am being denied meaningful representation – and my attorneys are not helping me in any way.



*Hon. Judge J Goldsmith*
*Case # 23-CR-2062*

**Pro Se Grievance Submission.**

**Request to change my attorney**

**Treating peaceful protest activity as a basis for forensic evaluation sets a dangerous precedent — one that implies any individual who exercises their First Amendment rights could be subjected to psychiatric scrutiny.**

**When the Government Ignores Supreme Court Rulings: How CMS, DOJ, and Defense Attorneys Undermine Justice**

Despite this, court-appointed attorneys Leanna Belcher and Michael Rataj have repeatedly misrepresented the legal issues in this case to advance their personal agendas. Ms. Belcher's remarks — referencing my protest activity and photo postings — were inappropriate, prejudicial, and legally irrelevant. My ethnicity, religion, or political views have no bearing on the legal merits of this case. **Her suggestion that Judge Goldsmith's background might influence his impartiality was inflammatory and deeply inappropriate.** There is **NO** indication that **Judge Goldsmith** acted improperly, and such insinuations are both unfounded and disruptive to the integrity of the judicial process. These arguments were not only **unprecedented** in their use as **justification** for a forensic psychiatric evaluation, but also served as a deliberate attempt by counsel to **shift focus** away from the controlling legal issues and binding precedent.

In reviewing the record, I cannot help but notice a recurring pattern in the advocacy of court-appointed counsel Leanna Belcher and Michael Rataj. Constitutionally protected protest activity — including the lawful publication of protest-related images — was emphasized as a basis for recommending a forensic psychiatric evaluation. Meanwhile, binding legal precedent such as the published decision in *Jimmo v. Sebelius* was mischaracterized as "unpublished," and civil rulings with direct regulatory implications were dismissed as irrelevant to a criminal matter — despite clear legal authority to the contrary. Additionally, counsel ignored the statutory distinction that RN SOC is not a certification under Medicare law, instead adopting CMS's sub-regulatory reinterpretation. These choices raise serious concerns about whether the legal framing presented was designed to clarify the issues — or to obscure them.



FILED
OCT 14 2025
CLERK'S OFFICE
DETROIT

**HON, JUDGE, Mc Million. Brandy R.**
**Case #2;24 CR 20306**
**Pro Se Grievance Submission.**

**Request to change my attorney**

**Treating peaceful protest activity as a basis for forensic evaluation sets a dangerous precedent — one that implies any individual who exercises their First Amendment rights could be subjected to psychiatric scrutiny.**

**When the Government Ignores Supreme Court Rulings: How CMS, DOJ, and Defense Attorneys Undermine Justice**

Despite this, court-appointed attorneys Leanna Belcher and Michael Rataj have repeatedly misrepresented the legal issues in this case to advance their personal agendas. Ms. Belcher's remarks — referencing my protest activity and photo postings — were inappropriate, prejudicial, and legally irrelevant. My ethnicity, religion, or political views have no bearing on the legal merits of this case. **Her suggestion that Judge Goldsmith's background might influence his impartiality was inflammatory and deeply inappropriate. There is NO indication that Judge Goldsmith acted improperly, and such insinuations are both unfounded and disruptive to the integrity of the judicial process. These arguments were not only unprecedented in their use as justification for a forensic psychiatric evaluation, but also served as a deliberate attempt by counsel to shift focus away from the controlling legal issues and binding precedent.**

In reviewing the record, I cannot help but notice a recurring pattern in the advocacy of court-appointed counsel Leanna Belcher and Michael Rataj. Constitutionally protected protest activity — including the lawful publication of protest-related images — was emphasized as a basis for recommending a forensic psychiatric evaluation. Meanwhile, binding legal precedent such as the published decision in *Jimmo v. Sebelius* **was mischaracterized as "unpublished," and civil rulings with direct regulatory implications were dismissed as irrelevant to a criminal matter — despite clear legal authority to the contrary. Additionally, counsel ignored the statutory distinction that RN SOC is not a certification under Medicare law, instead adopting CMS's sub-regulatory reinterpretation. These choices raise serious concerns about whether the legal framing presented was designed to clarify the issues — or to obscure them.**

Neither CMS, Nor DOJ respect U.S supreme court rulings , Attorney, Mike Rataij, and Leanna Belcher not only ignoring, but also attempting to conceal this facts misleading all U,S citizen the by sending their client to competency Evaluation. Justice Gorsuch had more details in his Directives commenting on Azar.v Alina case has more power than jimmo.v. Sebelius case, Nationwide court rulings ordered required CMS to revise its unlawful benefit policy mandated itself created bypassing the lawful rule makers , congress comment process.

**every time CMS's sub-regulatory shortcuts are tested, they collapse.** That collapse in civil cases makes it indefensible for DOJ to recycle the same unlawful standards in criminal, This indicate the problem is with the government itself, and the U.S supreme court no Cases like Jimmo IFCMC Respect the court rulings, there would have been no cases + if DoJ Respect court rulings there would have been no cases like mine, brockfah etc The court-appointed attorneys, Michael Rataj and Leanna Belcher, knowingly misled the Court to advance their own agendas and for personal gratification. They falsely asserted that *Jimmo v. Sebelius* (2013) is not a published or binding decision, thereby misrepresenting its legal significance. In doing so, they disregarded not only *Jimmo* but also the nationwide holdings in *Azar v. Allina* (2019) and related appellate authority — all of which directly undermine the regulatory framework CMS and DOJ rely upon in this case. Their misstatements deprived the Court of critical precedent and distorted the legal context necessary for a fair and informed adjudication.—thereby concealing controlling precedent that condemns CMS's unlawful reimbursement doctrines and presenting rejected sub-regulatory standards as if they were legitimate law. DOJ's continued enforcement of those repudiated sub-regulatory standards effectively prosecutes health professionals like me based on vacated or unlawful policy, demonstrating a troubling disregard for nationwide judicial rulings and Justice Gorsuch's admonition in Allina that agencies(CMS,& indirectly DOJ enforces CMS scam billing system) ) may not bypass the notice-and-comment process to change substantive payment standards. The judiciary in Jimmo expressly condemned CMS's unlawful "improvement" approach and ordered CMS to revise its self-created benefit manual policy, a mandate that remains relevant to the government's current enforcement posture. Second, counsel invoked my public protests and protest photographs

**Formal Demand stop contradicting yourselves, and  to Correct the Record and Acknowledge My Defense**

The only way to resolve the contradictions that have led to your misleading the court is to directly address the legal authority I have presented — authority that forms the core of my defense and which you continue to ignore. Your refusal to engage with the case law I've cited — including binding precedent that invalidates CMS's sub-regulatory standards — does not render

those rulings irrelevant. On the contrary, it further exposes the contradictions in your position and the extent to which you have misrepresented the legal framework of this case.

Your continued disregard for the heart of my defense is the very reason these contradictions exist. Whether we continue to communicate or cease communication altogether, the facts remain unchanged: you have ignored controlling law, mischaracterized my defense, and misled the court. I will continue to assert my right to a lawful, competent, and ethical defense. I will take all necessary steps to ensure that the record reflects the truth — including reporting these contradictions to the forensic psychologist and filing a grievance with the Michigan Attorney Grievance Commission.

You stated: *"What you sent is a Medicare regulation which does not address the allegations..."* — yet also claimed: *"Rules and regulations are important despite what you think."* This is a clear contradiction. You affirm the importance of regulations, then dismiss the very regulation I cited — one that directly governs how services are defined, billed, and reimbursed under Medicare.

If rules and regulations are important, then **Medicare regulations absolutely matter — especially when they define what counts as "necessary" or "rendered" services. Your statement minimizes my legal argument and falsely implies that I am disregarding the law, when in fact I am citing binding case law and statutory authority.**

**I am not ignoring the rules — I am challenging unlawful interpretations of those rules, which is precisely what courts have done in *Jimmo v. Sebelius, Allina v. Azar, Prather v. Brookdale*, and others. CMS's sub-regulatory interpretations of these terms have been judicially condemned. These rulings are not only relevant — they are binding precedent in my jurisdiction.**

**The Medicare regulation I referenced is not presented in isolation. It is part of a broader legal framework supported by multiple federal appellate and Supreme Court rulings that have explicitly rejected CMS's sub-regulatory standards as unlawful. Allegations of conspiracy or fraud cannot be properly evaluated without examining the regulatory foundation on which they rest — particularly when that foundation has been invalidated by binding judicial precedent.**

Despite this, court-appointed attorneys Leanna Belcher and Michael Rataj have repeatedly misrepresented the legal issues in this case to advance their personal agendas. Ms. Belcher's

remarks — referencing my protest activity and photo postings — were inappropriate, prejudicial, and legally irrelevant. My ethnicity, religion, or political views have no bearing on the legal merits of this case. **Her suggestion** that **Judge Goldsmith's** background might influence his impartiality was inflammatory and deeply inappropriate. There is **NO** indication that Judge Goldsmith acted improperly, and such insinuations are both unfounded and disruptive to the integrity of the judicial process. These unlawful arguments were not only unprecedented maneuver in their use as justification for a forensic psychiatric evaluation, but also served as a deliberate attempt by counsel to shift focus away from the controlling legal issues and binding precedent.

Their pursuit of a competency evaluation appears to be an attempt to discredit my defense rather than advocate for it. This undermines my constitutional right to effective assistance of counsel. I have submitted over 4,000 emails detailing my position, supported by binding precedent and regulatory authority. Your continued refusal to engage with these arguments does not invalidate them — it only highlights Their failure to represent my defense accurately, ethically, and competently.

**Statement of Record: CMS Misconduct, DOJ Overreach, and Counsel Misrepresentation**

Put simply, CMS refuses to reimburse medically necessary care beyond its arbitrary limits, and DOJ then prosecutes providers for fraud — not because the care was improper, but because CMS unlawfully declined payment. The judiciary has repeatedly condemned CMS's practice of altering payment standards without lawful authority, as Justice Gorsuch emphasized in *Azar v. Allina*.

For example, CMS may reimburse only five (5) visits, even when fifteen or more combined visits (Nursing, PT, OT, MSW, etc.) are ordered by the certifying physician and documented as medically necessary. CMS provides no additional revenue for any discipline beyond its cap — whether five or fifteen visits, the payment remains the same, and additional visits only increase overhead costs. DOJ then treats these unreimbursed visits as Medicare fraud, creating a false equivalence between CMS non-payment and illegality.

In practice, certifying physicians may order twelve (12) physical therapy visits, and CMS requires attestation from the treating physicians that the patient did not benefit from those visits before approving further diagnostic procedures such as CT scans or MRIs. Yet CMS's refusal to reimburse these medically necessary visits becomes the basis for criminal prosecution.

*CMS's post-*Jimmo payment "fixes" — including its alterations to Face-to-Face (F2F) and certification roles, as well as its PDGM/LUPA reimbursement rules — functionally rewrite

Medicare payment law outside the lawful notice-and-comment process.** These changes deny or ignore credit for medically necessary visits, directly contradict judicial mandates and undermine the statutory protections affirmed in *Jimmo v. Sebelius*. Rather than complying with the Court's directive to honor medical necessity, CMS has restructured its payment framework to sidestep reimbursement obligations — effectively replacing legal standards with sub-regulatory policy.

Under the actual Medicare statute, an RN's Start of Care (SOC) is not a certification of eligibility. CMS unlawfully treats it as one, imposing requirements that do not exist in law. In *Jimmo v. Sebelius*, the Court compelled CMS to pay for care and condemned its use of the unlawful "Improvement Standard." CMS was ordered to revise its self-created benefit policy — yet instead of applying the same correction to our cases, CMS continued to deny medically necessary care, and DOJ pursued criminal charges.

Judicial rulings have condemned CMS's sub-regulatory guidance — published without congressional approval or public comment — as invalid and unlawful. This guidance cannot be treated as legitimate Medicare law. Nor can court-appointed counsel Michael Rataj and Leanna Belcher's misleading claims — that *Jimmo* is unpublished and irrelevant to criminal proceedings — override binding precedent. Nor can their assertion that RN SOC constitutes certification be reconciled with the Sixth Circuit's ruling in *Prather v. Brookdale*, which affirmed that RN SOC is not a certification under any circumstance.

Counsel's request for a forensic psychiatric evaluation — based on Defendant Sammour's peaceful protest and publication of protest photos — is inflammatory, unprecedented, and unjustified. Their claim that the case centers on alleged billing for services not rendered, including visits while Sammour RN (clinical case manager) was in Windsor, Canada, ignores the legitimacy of telehealth services and teaching visits. It also disregards CMS's unlawful refusal to reimburse visits beyond its five-visit cap.

Justice Gorsuch made clear in *Allina* that CMS cannot impose substantive payment changes without formal rulemaking and public comment. The Supreme Court and multiple federal circuits have condemned CMS for bypassing Congress and misrepresenting internal manuals as binding law. These rulings apply to all Medicare providers — not just hospitals — and CMS's refusal to comply has harmed providers, patients, and the integrity of the law itself.

Instead of reimbursement, we face criminal charges. Defendant Sammour, RN, seeks at least $5 million in damages per discipline for years of denied care — a remedy consistent with judicial condemnation of CMS's conduct. Sammour RN also seeks an additional $5 million in compensation for pain and suffering caused by CMS's unlawful actions. DOJ's portrayal of Medicare — based on CMS's rejected and nonsensical sub-regulatory guidance — undermines

the defense and violates the rights of every provider and beneficiary.

The evidence makes one thing crystal clear: the real problem lies within the government itself. Patients, health professionals, and the public should not be treated as victims — denied proper payment for federally mandated tasks — and then blamed or indicted when the fault rests with the government's own unlawful practices. Justice Gorsuch's directives in **Allinarulings indirectly affirmed that conclusion.**

Statements from government cooperative witnesses cannot legitimize sub-regulatory guidance that the judiciary has already condemned as unlawful. Such testimony does not substitute for the formal rulemaking and public comment process required by Congress, nor does it invalidate the directives and legal reasoning articulated by Justice Gorsuch in **Azar v. Allina. Nor does it excuse the conduct of court-appointed counsel Leanna Belcher and Michael Rataj, who misled the Court and disregarded binding precedent — conduct that is neither constitutional, professional, nor consistent with lawful practice.**

**I'll be more than glad to be available in person, with my computer, and my cell.**

**Exhibit A – Case Law Appendix**

| Case | Court | Holding | Application |
|------|-------|---------|-------------|
| *United States v. Safavian*(2008) | D.C. Cir. | Conviction overturned in part; relied on civil vagueness/ First Amendment cases | Confirms civil rulings guide criminal law |
| *Skilling v. United States*(2010) | U.S. Supreme Court | Relied on civil vagueness cases to narrow statute | Civil rulings applied in criminal law (evidence |

|  |  |  | Mike,& Leanna misled Judge Gold smith, Jimmo is a civil case, and its published, told the court can not be in criminal,& misled the court, told not published) |
|---|---|---|---|
| *Prather v. Brookdale*(2018) | 6th Cir. | RN SOC is not a statutory certification | Directly applicable to Michigan; binding precedent |
| *McKee v. Azar*(2019) | D. Vt. | Case resolved by settlement and dismissal with prejudice | CMS retreated rather than defend its denial |
| *Jimmo v. Sebelius*(2013) | D. Vt. | CMS forced to abandon unlawful "improvement standard" | Shows CMS cannot impose sub-regulatory standards outside statute |

| | | | as justice Gorsuch affirmed (Alina case) |
|---|---|---|---|
| *Allina Health Services v. Sebelius*(2014) & *Azar v. Allina*(2019) | D.C. Cir. & U.S. Supreme Court | CMS cannot impose new substantive payment rules without notice-and-comment | Reinforces statutory supremacy |
| *Dobson v. Secretary of HHS*(2022) | 11th Cir. | CMS denial reversed; statute controlled | Confirms statute governs over CMS manuals |
| *Erringer v. Thompson*(2004) | 9th Cir. | CMS reliance on unpublished criteria rejected | Shows CMS's sub-regulatory shortcuts unlawful |
| *United States v. Paulus*(2018) | 6th Cir. | Conviction vacated; ambiguous CMS guidance and Brady violations undermined due process | Criminal precedent directly applicable |

| United States v. Whiteside(2002) | 11th Cir. | Conviction reversed; ambiguous guidance insufficient | Confirms across circuits |
|---|---|---|---|
| United States v. Lanier(1997) | U.S. Supreme Court | Civil "fair notice" principles apply in criminal prosecutions | Direct precedent |

## 15,& more  Keys of  CMS's Unlawful Sub-Regulatory Standards

### 1. The "Improvement Standard" (*Jimmo v. Sebelius*, D. Vt. 2013)

**What CMS Did:** CMS manuals required patients to show "improvement" to qualify for skilled care.

**Court/Settlement:** Nationwide settlement approved by federal court. CMS agreed to revise manuals to clarify that Medicare covers skilled care needed to maintain a patient's condition or slow deterioration — not just to improve.

**Result:** CMS was forced to revise its manuals nationwide.

### 2. RN Start of Care (SOC) as Certification (*Prather v. Brookdale Senior Living Communities*, 6th Cir. 2018)

**What CMS Did:** CMS blurred the statutory requirement of a physician certification with its manual gloss that treated an RN SOC assessment as equivalent.

**Court Ruling:** The Sixth Circuit held that certifications must be obtained from physicians at the time the plan of care is established or "as soon thereafter as possible" (42 C.F.R. §424.22). An RN SOC is not a statutory certification.(DOJ misled the jury at district court by applying judiciary condemned unlawful rejected, invalid CMS sub regulatory Guidance, and published in CMS website as if they were legitimate law, &DOJ unlawfully enforces. Reversed by applying the lawful Medicare Statue at the appellate court.

**Result:** CMS's manual interpretation was rejected as unlawful.

## 3. Unpublished Local Coverage Determinations (LCDs) (*Erringer v. Thompson*, 9th Cir. 2004)

**What CMS Did:** CMS contractors denied claims based on unpublished LCDs and internal criteria.

**Court Ruling:** The Ninth Circuit found that reliance on unpublished, extra-statutory LCDs without notice violated due process.

**Result:** CMS was forced to provide notice and transparency regarding LCDs.

## 4. Unlawful Narrowing of Coverage (*Dobson v. Secretary of HHS*, 11th Cir. 2022)

**What CMS Did:** CMS denied coverage for an off-label prescription (dronabinol) despite statutory support.

**Court Ruling:** The Eleventh Circuit reversed, holding that Medicare must cover off-label uses supported by drug compendia. CMS's narrow interpretation unlawfully restricted coverage.

**Result:** CMS cannot unlawfully narrow coverage beyond the statute.

## 5. 2004 DSH Rule Without Notice-and-Comment (*Allina Health Services v. Sebelius*, D.C. Cir. 2014)

**What CMS Did:** CMS changed the formula for Disproportionate Share Hospital (DSH) payments through guidance, not regulation.

**Court Ruling:** The D.C. Circuit vacated the rule, holding that CMS failed to provide adequate notice and opportunity for comment.

**Result:** CMS's attempt to bypass rulemaking was struck down.

## 6. Substantive Payment Rules Without Rulemaking (*Azar v. Allina Health Services*, U.S. Supreme Court, 2019)

**What CMS Did:** CMS attempted to impose new payment rules through guidance documents and manual instructions.

**Justice Gorsuch's Directive:** CMS cannot bypass Congress's notice-and-comment process. Any substantive change to Medicare payment rules must go through rulemaking.

**Impact:**
- Broader than *Jimmo*: invalidated CMS's entire practice of using manuals and guidance as binding law.
- Applies nationwide across all Medicare payment contexts.
- Sub-regulatory constructs are neither valid in civil cases (*Jimmo, Brookdale, Dobson*) nor in criminal cases (*Paulus, Whiteside*).

### 7. LUPA (Low-Utilization Payment Adjustment) Misapplication

**Statutory Basis:** 42 U.S.C. §1395fff and 42 C.F.R. §484.230 require CMS to pay the full PPS episodic rate once visits exceed the LUPA threshold.

**What CMS Did:** CMS's claims systems and manuals sometimes down-coded episodes or denied full payment even when thresholds were exceeded the lupa combined 5 visits.

**Problem:** This is an unlawful sub-regulatory construct because it contradicts the statute and regulation.

### 8. *McKee v. Azar* (D. Conn. 2019)

**Facts:** A Medicare beneficiary in Connecticut was denied skilled nursing facility (SNF) coverage despite receiving daily skilled rehabilitation services.

**Court's Finding:** CMS misapplied the law by narrowing coverage beyond what the statute allowed.

**Benefit to You:** Shows CMS has a pattern of unlawfully narrowing coverage through sub-regulatory interpretations.

### 9. *United States v. Paulus* (6th Cir. 2018 & 2020)

**Facts:** A cardiologist was convicted of health care fraud for allegedly exaggerating artery blockages.

**Court's Finding:** Conviction vacated because the government relied on ambiguous standards and failed to prove falsity beyond a reasonable doubt.

**Benefit to You:** Demonstrates that criminal convictions cannot stand when based on ambiguous or extra-statutory CMS standards.

### 10. *United States v. Whiteside* (11th Cir. 2002)

**Facts:** Hospital executives were convicted for false statements in Medicare cost reports.

**Court's Finding:** Convictions reversed because the government failed to prove the statements were knowingly false; the rules were too ambiguous.

**Benefit to You:** Reinforces that ambiguity in CMS's cost reporting and billing rules cannot support criminal liability.

### 11. *Canji* (as cited in *United States v. Yolanda Hamilton*)

**Facts:** The *Hamilton* case involved a physician convicted of Medicare fraud for certifying patients as homebound when they were not. *Canji* was cited in that litigation.

**Benefit to You:** If *Canji* criticized CMS's misuse of certification rules, it reflects judicial skepticism toward CMS's sub-regulatory shortcuts.

## 12. *United States v. AseraCare, Inc.* (11th Cir. 2019)

**Facts:** DOJ alleged hospice provider AseraCare submitted false claims by certifying patients as terminally ill when government experts disagreed.

**Court's Finding:** A reasonable disagreement between medical experts cannot, by itself, establish falsity under the FCA. Objective falsehood is required.

**Benefit to You:** Reinforces that clinical judgment disputes and ambiguous CMS standards cannot be the basis for fraud liability.

## 13. *Skilling v. United States*, 561 U.S. 358 (2010)

**Criminal Case:** Enron CEO prosecuted for "honest services" fraud.

**Civil Precedent Cited:** Relied on civil vagueness doctrine cases (e.g., *Grayned v. City of Rockford*).

**Result:** The statute was narrowed; vague standards cannot support criminal liability.

**Benefit to You:** Confirms that vague CMS constructs cannot sustain fraud charges.

## 14. *United States v. Lanier*, 520 U.S. 259 (1997)

**Criminal Case:** Civil rights prosecution under 18 U.S.C. §242.

**Civil Precedent Cited:** Relied on civil due process "fair notice" cases.

**Result:** Court held civil fair-notice principles apply equally in criminal prosecutions.

**Benefit to You:** Shows that civil doctrines of fair notice apply with equal or greater force in criminal Medicare fraud cases.

## 15. *United States v. Safavian*, 528 F.3d 957 (D.C. Cir. 2008)

**Criminal Case:** Government official prosecuted in connection with lobbyist Jack Abramoff.

**Civil Precedent Cited:** Relied on civil First Amendment and vagueness cases.

**Result:** Convictions partially overturned; vague and overbroad standards cannot sustain liability.

**Benefit to You:** Confirms that vague or ambiguous government standards cannot support criminal convictions.

**Unified Principle**

**Civil Cases (Jimmo, Brookdale, McKee, Dobson, Erringer):** CMS is forced to retreat when it unlawfully narrows coverage or rewrites the statute.

**Criminal Cases (Paulus, Whiteside, AseraCare, Skilling, Lanier, Safavian):** Convictions collapse when DOJ relies on ambiguous CMS standards.

*Supreme Court (*
Allina):** Justice Gorsuch confirmed CMS cannot impose substantive payment rules without notice-and-comment.
**Application to You:** CMS denied reimbursement above the LUPA threshold using unlawful constructs. Being denied reimbursement cannot be fraud. Your attorneys ignored this binding precedent, misled the Court, and undermined your defense.

**Pre-2020 CMS models** used coding constructs that allegedly allowed CMS to deny entire 60-day payment episodes if services were deemed not to have improved the patient — a standard criticized as medically and legally flawed.
**Post-2020 PDGM model** introduced a new justification: denying payment if services *did* improve the patient, especially when unreimbursed services exceeded the LUPA (Low Utilization Payment Adjustment) threshold in the first 30 days. This circular logic has been challenged as inconsistent with statutory Medicare provisions.
**No credit or carryover** between the two halves of the 60-day certification period under PDGM means that physician-ordered care in the first half can be effectively erased, undermining continuity and reimbursement for medically necessary services.
**Face-to-Face (F2F) narrative requirements** were expanded by CMS without formal rulemaking, shifting certification responsibility away from physicians and tying it to sub-regulatory payment rules. This has been criticized as violating the Administrative Procedure Act, especially in light of judicial rulings like *Allina* and *Jimmo* that condemned CMS's use of informal guidance to enforce payment standards.

**Semantic reclassification** of services from "medically necessary" to "reasonable and necessary" has been used to deny payment, despite the services being ordered by physicians and provided by skilled care professionals.

**Judicial Condemnation**
Cases like *Jimmo v. Sebelius, Brookdale*, and *Allina Health Services v. Azar* have established that CMS cannot enforce payment rules that were not properly adopted through notice-and-comment rulemaking. Justice Gorsuch's opinion in *Allina* emphasized that sub-regulatory shortcuts are unlawful when they affect payment determinations.

CMS FAILS TO ADDRESS SIGNIFICANT CONCERNS OF HOME HEALTH CARE INDUSTRY

Neither CMS, Nor DOJ respect U.S supreme court, Attorney, Mike Rataij, and Leanna Belcher not only ignoring, but also attempting to conceal this facts misleading  all U,S citizen the by

sending their client to competency Evaluation. Justice Gorsuch had more details in his Directives commenting on Azar.v Alina case has more power than jimmo.v. Sebelius case, Nationwide court rulings ordered required CMS to revise its unlawful benefit policy mandated itself created bypassing the lawful rule makers , congress comment process.
**every time CMS's sub-regulatory shortcuts are tested, they collapse.** That collapse in civil cases makes it indefensible for DOJ to recycle the same unlawful standards in criminal, This indicate the problem is with the government itself, and the U.S supreme court

## CMS FAILS TO ADDRESS SIGNIFICANT CONCERNS OF HOME HEALTH CARE INDUSTRY

On Sunday, October 5, 2025 at 07:18:23 PM EDT, Leanna Belcher <leanna@belcherlawfirm.com> wrote:

Again, it is this behavior that led to your examination. Highlighting prior emails and resending does not change the fact you cannot assist in your defense.

**From:** Ibrahim Sammour <abesammour@yahoo.com>
**Sent:** Sunday, October 5, 2025 7:19:48 PM
**To:** Leanna Belcher <leanna@belcherlawfirm.com>; Michael Rataj <ratajmi@aol.com>
**Subject:** Leanna premised on protected protest activity

Leanna premised on protected protest activity—an activity that is not a Medicare crime—and knowingly misled the Court by relying on those irrelevant materials to justify the request.

The Centers for Medicare and Medicaid Services (CMS) released the 2023 Home Health Final Rule, which reduces the anticipated impact on home health providers in the coming year but fails to address significant industry concerns. Axxess has been actively engaged in a broad industry advocacy effort over the past several months which has resulted in a phase in of cuts first introduced this summer in the proposed rule. But the methodology being used by CMS to determine reimbursements to home health providers has serious flaws that, if not addressed, will result in major consequences for our industry. Over the past year, our aggressive advocacy campaign has presented CMS with detailed analyses regarding its budget neutrality obligations under Medicare law in setting payment rates, as well as comprehensive assessment of the onerous impact of its proposals on patients and providers. CMS has applied a methodology that is inconsistent with what it used in assessing rate neutrality for nursing homes. We have also shown CMS that its action is inconsistent with its own data that show it underpaid home health agencies since 2020. The federal government doesn't seem to consider the fact that demand for home health services is on the rise. Patients are growing older and sicker, with more than 25% of home health users being over the age of 85, and 43% having five or more chronic health conditions. If unchanged, the flawed methodology used by CMS will directly

impact access to care for the 3.2 million home health patients depending on this Medicare benefit at a time when home health services are critically needed to meet patient needs and control overall Medicare spending.

Medicare home health enables older Americans and people with disabilities to recover from serious injuries or illnesses in the safety of their own homes. It allows them to be surrounded by their loved ones and regain their health in a familiar environment, making recovery a more comfortable journey. And it's no secret that patients would rather recover in their own homes. A recent national poll from Morning Consult shows 91% of older Americans and Medicare beneficiaries expressed the highest preference for receiving short-term recovery or rehabilitation heath care at home.

further cuts to home health providers

Our best opportunity to stop further cuts to home health providers in the near-term is through passing legislation introduced by Congressional champions in Washington. Please take a minute to contact your members of Congress in support of S. 4605 and H.R. 8581, The Preserving Access to Home Health Act, which would prevent further home health cuts until 2026.

As a board member for the National Association for Home Care & Hospice, I encourage you to use the NAHC Advocacy Center to make your voice heard by your U.S. Senators and U.S. Representative today. It's easy to do and should only take a minute.

You can be sure Axxess will be doing all we can to engage with other industry leaders to secure passage of this important legislation before it's too late.

Sincerely,

Founder and CEO

Axxess

Axxess | Copyright © 2008 - 2022 | All Rights Reserved | Privacy Policy | 16000 Dallas Parkway, Suite 700N, Dallas, TX 75248 | (214) 575-7711.
This email was sent to ihhc1@yahoo.com. If you no longer wish to receive these emails you may unsub

The Centers for Medicare and Medicaid Services (CMS) released the 2023 Home Health Final Rule, which reduces the anticipated impact on home health providers in the coming year but fails to address significant industry concerns. Axxess has been actively engaged in a broad industry advocacy effort over the past several months which has resulted in a phase in of cuts first introduced this summer in the proposed rule. But the methodology being used by CMS to determine reimbursements to home health providers has serious flaws that, if not addressed, will result in major consequences for our industry. Over the past year, our aggressive advocacy campaign has presented CMS with detailed analyses regarding its budget neutrality obligations under Medicare law in setting payment rates, as well as comprehensive assessment of the onerous impact of its proposals on patients and providers. CMS has applied a methodology that is inconsistent with what it used in assessing rate neutrality for nursing homes. We have also shown CMS that its action is inconsistent with its own data that show it underpaid home health agencies since 2020.

The federal government doesn't seem to consider the fact that demand for home health services is on the rise. Patients are growing older and sicker, with more than 25% of home health users being over the age of 85, and 43% having five or more chronic health conditions. If unchanged, the flawed methodology used by CMS will directly impact access to care for the 3.2 million home health patients depending on this Medicare benefit at a time when home health services are critically needed to meet patient needs and control overall Medicare spending.

Medicare home health enables older Americans and people with disabilities to recover from serious injuries or illnesses in the safety of their own homes. It allows them to be surrounded by their loved ones and regain their health in a familiar environment, making recovery a more comfortable journey. And it's no secret that patients would rather recover in their own homes. A recent national poll from Morning Consult shows 91% of older Americans and Medicare beneficiaries expressed the highest preference for receiving short-term recovery or rehabilitation heath care at home.

further cuts to home health providers

Our best opportunity to stop further cuts to home health providers in the near-term is through passing legislation introduced by Congressional champions in Washington. Please take a minute to contact your members of Congress in support of S. 4605 and H.R. 8581, The Preserving Access to Home Health Act, which would prevent further home health cuts until 2026.

As a board member for the National Association for Home Care & Hospice, I encourage you to use the NAHC Advocacy Center to make

your voice heard by your U.S. Senators and U.S. Representative today. It's easy to do and should only take a minute.

You can be sure Axxess will be doing all we can to engage with other industry leaders to secure passage of this important legislation before it's too late.

Sincerely,


Founder and CEO

Axxess

Axxess | Copyright © 2008 - 2022 | All Rights Reserved | Privacy Policy | 16000 Dallas Parkway, Suite 700N, Dallas, TX 75248 | (214) 575-7711.

This email was sent to ihhc1@yahoo.com. If you no longer wish to receive these emails you may unsub

**From:** Ibrahim Sammour <abesammour@yahoo.com>
**Sent:** Sunday, October 5, 2025 7:10 PM
**To:** ratajmi@aol.com <ratajmi@aol.com>; Leanna Belcher <leanna@gonekbelcherlaw.com>; donnini@butzel.com <donnini@butzel.com>
**Subject:** Treating protest activity as a basis for forensic


Treating protest activity as a basis for forensic evaluation would mean anyone who has protested could be forced into an exam


On Sunday, October 5, 2025 at 07:03:59 PM EDT, Ibrahim Sammour <abesammour@yahoo.com> wrote:

if every one protest in America, it means all Americans should go forensic exam, because every one protest for some thing,

## EXHIBIT A
**Timeline of CMS's Unlawful Face-to-Face Narrative Requirement**

# Timeline of the F2F Narrative Requirement

**Year / Authority**

**Event**

**Key Point**

**2010 – ACA §6407**

Congress added a statutory requirement that a physician (or NPP) must have a **Face-to-Face encounter** with the patient before certifying eligibility for home health services.

Statute required only **attestation of encounter** + certification of homebound/skilled need. No narrative.

**2011 – CMS Manual (MBPM Ch. 7, §30.5.1.1)**

CMS implemented the F2F requirement in the **Medicare Benefit Policy Manual** and added a **"brief narrative" requirement**: the physician had to describe how clinical findings supported homebound status and skilled need.

This **narrative** was **not in the statute** — it was CMS's unlawful addition.

**2011–2014 – CMS/MAC Education**

CMS tied the F2F documentation to **OASIS Start of Care (SOC)** processes. MACs instructed providers: *"new F2F for every completed start of care OASIS assessment."*

This unlawfully shifted part of the statutory certification duty from physicians to RNs/therapists conducting SOC.

**2015 – CY 2015 HH PPS Final Rule & Change Request 9119**

CMS **eliminated the narrative requirement** effective **Jan. 1, 2015.** Physicians still had to attest to the F2F encounter and date, but no narrative was required.

CMS admitted the narrative was burdensome and unnecessary. Reviewers were directed to rely on the physician's medical record instead.

**Post-2015 – DOJ Enforcement**

Despite CMS rescinding the narrative, DOJ continues to prosecute providers under the shadow of these rescinded manual provisions. Criminal liability cannot be based on **extra-statutory guidance**, especially one CMS itself abandoned.

## Description of Exhibit

This exhibit provides a chronological summary of the statutory and regulatory history of the Medicare Face-to-Face (F2F) encounter

requirement. It demonstrates that:

1 Congress, in 42 U.S.C. § 1395f(a)(2)(C), required only physician (or NPP) certification of homebound status and skilled need.

2 CMS unlawfully added a "brief narrative" requirement in the Medicare Benefit Policy Manual, Chapter 7, § 30.5.1.1, and tied it to Start of Care (SOC) processes in § 30.5.1.2.

3 CMS eliminated the narrative requirement in the CY 2015 Home Health PPS Final Rule and Change Request 9119, effective January 1, 2015.

4 DOJ nevertheless continues to prosecute providers under the shadow of these rescinded manual provisions.

Exhibit Contents

- **Table: Timeline of the F2F Narrative Requirement (2010–2015)**
- **Key Sources:**
  - 42 U.S.C. § 1395f(a)(2)(C)
  - Medicare Benefit Policy Manual, Ch. 7, §§ 30.5.1.1–30.5.1.2
  - CY 2015 Home Health PPS Final Rule
  - CMS Change Request 9119 (Transmittal R92GI; MLN Matters MM9119)
  - CMS/MAC Education Materials

## EXHIBIT B

**Statutory Certification vs. CMS Manual Narrative Requirement**

**Description of Exhibit**

This exhibit provides a direct comparison between the **statutory requirements enacted by Congress** and the **extra-statutory requirements imposed by CMS** through its Medicare Benefit Policy Manual. It demonstrates that CMS unlawfully added a "brief narrative" requirement and tied certification to Start of Care (SOC) processes, neither of which appear in the statute.

**Exhibit Contents**

**Statute (42 U.S.C. § 1395f(a)(2)(C))**

**CMS Manual (MBPM Ch. 7, §§ 30.5.1.1–30.5.1.2)**

Requires only that a **physician (or NPP)** certify that the patient is **confined to the home** and **in need of skilled services.**

Required that the certifying physician **"include a brief narrative describing how the patient's clinical condition, as seen during that encounter, supports the patient's homebound status and need for skilled services."**

No statutory requirement for a **narrative explanation.**

Added a **narrative requirement** not found in the statute.

No statutory role for RNs or therapists in certification.

Tied certification to the **OASIS Start of Care (SOC) assessment**, effectively shifting duties to RNs/therapists.

Congress gave certification authority only to physicians (or NPPs).

CMS unlawfully expanded certification duties through sub-regulatory guidance.

**Key Sources**

- **42 U.S.C. § 1395f(a)(2)(C)**
- **Medicare Benefit Policy Manual, Ch. 7, §§ 30.5.1.1–30.5.1.2**
- **CY 2015 Home Health PPS Final Rule**
- **CMS Change Request 9119 (Transmittal R92GI; MLN Matters MM9119).**

## Statute vs. CMS Manual (Face-to-Face Narrative)

| Year / Authority | Event | Key Point |
|---|---|---|
| **2010 – ACA §6407** | Congress added a statutory requirement that a physician (or NPP) must have a **Face-to-Face encounter** with the patient before certifying eligibility for home health services. | Statute required only **attestation of encounter +** certification of homebound/skilled need. No narrative. |
| **2011 – CMS Manual (MBPM Ch. 7, §30.5.1.1)** | CMS implemented the F2F requirement in the **Medicare Benefit Policy Manual** and added a **"brief narrative"** requirement: the | This **narrative** was **not in the statute —** it was CMS's unlawful addition. |

| | | |
|---|---|---|
| | ~~requirement.~~ the physician had to describe how clinical findings supported homebound status and skilled need. | |
| **2011–2014 – CMS/ MAC Education** | CMS tied the F2F documentation to **OASIS Start of Care (SOC)** processes. MACs instructed providers: *"new F2F for every completed start of care OASIS assessment."* | This unlawfully shifted part of the statutory certification duty from physicians to RNs/therapists conducting SOC. |
| **2015 – CY 2015 HH PPS Final Rule & Change Request 9119** | CMS **eliminated the narrative requirement** effective **Jan. 1, 2015**. Physicians still had to attest to the F2F encounter and date, but no narrative was required. | CMS admitted the narrative was burdensome and unnecessary. Reviewers were directed to rely on the physician's medical record instead. |
| **Post-2015 – DOJ Enforcement** | Despite CMS rescinding the | Criminal liability cannot be based |

| | narrative, DOJ continues to prosecute providers under the shadow of these rescinded manual provisions. | on **extra-statutory guidance**, especially one CMS itself abandoned. |
|---|---|---|

| Statute (42 U.S.C. § 1395f(a)(2)(C)) | CMS Manual (MBPM Ch. 7, §§ 30.5.1.1–30.5.1.2) |
|---|---|
| Requires only that a **physician (or NPP)** certify that the patient is **confined to the home** and **in need of skilled services.** | Required that the certifying physician **"include a brief narrative describing how the patient's clinical condition, as seen during that encounter, supports the patient's homebound status and need for skilled services."** |
| No statutory requirement for a **narrative explanation.** | Added a **narrative requirement** not found in the statute. |
| No statutory role for RNs or therapists in certification. | Tied certification to the **OASIS Start of Care (SOC) assessment**, effectively shifting duties to RNs/therapists. |
| Congress gave certification authority only to physicians (or NPPs). | CMS unlawfully expanded certification duties through sub-regulatory guidance. |

| Congressional Statute – 42 U.S.C. § 1395f(a)(2)(C) | CMS Manual (MBPM Ch. 7, § 30.5.1.1 & § 30.5.1.2) |
|---|---|
| Requires only that a **physician (or authorized NPP)** certify that the patient is **confined to the home** and **in need of skilled services.** | Required that the certifying physician **"include a brief narrative describing how the patient's clinical condition, as seen during that encounter, supports the patient's homebound status and need for skilled services."** |
| No statutory requirement for a **narrative explanation.** | Added a **narrative requirement** not found in the statute. |
| No statutory role for RNs or therapists in certification. | Tied the certification to the **OASIS Start of Care (SOC) assessment** performed by RNs/therapists, effectively shifting part of the statutory duty away from physicians. |
| Congress gave certification authority only to physicians (or NPPs). | CMS unlawfully expanded certification duties to non-physician staff through sub-regulatory guidance |

**From:** ratajmi@aol.com <ratajmi@aol.com>
**To:** Ibrahim Sammour <abesammour@yahoo.com>
**Cc:** leanne@belcherlawfirm.com <leanne@belcherlawfirm.com>
**Sent:** Sunday, October 5, 2025 at 05:09:23 PM EDT
**Subject:** Re: right argument v. misleading argument

Let me make myself as clear as possible.  Judge Goldsmith was not going to dismiss the Indictment.  This is just further proof that you are untethered from reality.  Your behavior and insistence on pursuing a ridiculous defense that <u>has no basis in law or fact as it relates to the allegations against you</u> is what forced Ms. Belcher and I to file the motion for competency.  Moreover, your refusal to assist us in your defense is only hurting you. Lastly, Judge Goldsmith <u>agreed</u> that you are <u>untetherd</u> from reality. He read only a small fraction of your ChatGPT emails as well as the decisions that you base <u>your ill conceived legal argument</u>.  The Judge also gave you the opportunity to speak.  Based on all of this, Judge Goldsmith <u>ordered</u> a competency exam.  That is the reality.  Pointing the fingers at others and <u>propping yourself up as some kind of champion of justice is further</u> proof that you require a competency evaluation.  You are not engaged in <u>protest</u>.  You are engaged in <u>deflection and a failure</u> to understand that the <u>evidence of fraud against you is substantial</u>.  You need to realize that bullying your lawyers is not going to work.  We will <u>continue</u> to do our job <u>professionally, ethically and in accordance with our constitutional duties.</u>

---- Forwarded Message -----
**From: ratajmi@aol.com <ratajmi@aol.com>**
**To: Christopher Antone <chris.antone@gmail.com>; Ibrahim**

**Sammour <abesammour@yahoo.com>**

**Sent: Sunday, April 14, 2024 at 08:37:31 PM EDT**

**Subject: Re: conflict of interest**

**Dont insult me.  <u>Political</u> persuasion has <u>absolutely</u> <u>nothing</u> to do with my <u>duties as a lawyer</u>**

On Sunday, October 5, 2025 at 07:18:23 PM EDT, Leanna Belcher <leanna@belcherlawfirm.com> wrote:

Again, it is this behavior that led to your examination. Highlighting prior emails and resending does not change the fact you cannot assist in your defense.

**From: Ibrahim Sammour <abesammour@yahoo.com>**

**Sent: Saturday, October 4, 2025 10:12:31 AM**

**To: Michael Rataj <ratajmi@aol.com>; Leanna Belcher <leanna@gonekbelcherlaw.com>**

**Subject: 3 Question , you never answered**

3 Question , you never answered, evidence you misled the court
you, and Leanna showed me jimmo not published, can you deny?
what's the purpose you misled the court?!
what does protesting has to do with competency EVAL?
---- Forwarded Message -----
**From:** Leanna Belcher <leanna@belcherlawfirm.com>
**To:** Ibrahim Sammour <abesammour@yahoo.com>; Michael Rataj <ratajmi@aol.com>
**Sent:** Saturday, October 4, 2025 at 10:09:29 AM EDT
**Subject:**
Re: what's the purpose you misled the court?!

**"No, Mr. Sammour. The only evidence we have in these emails is evidence of why a competency referral is in your best interest."**
**Sammour Response is**

misleading the court was never  my best interest, nor the interest of justice, nor the interest of the Patients, health providers, public are victims a like of the Judiciary condemned unlawful CMS ordered to revise its own self created benefit manual policy, and its own self regulatory standards, jimmo, brookdale, Mckee, Alina Cases, and the rest of the list of the case laws, and the lawful Medicare statues, and Justice Gorsuch have more to add .inventing unprecedented unlawful argument in the court proceeding. invoking unintelligible maneuver Sammour protest, and publish his protest photos to your unexplained request for forensic exam  to undermine mine defense  should be addressed seriously at court.

**From:** Leanna Belcher <leanna@belcherlawfirm.com>
**To:** Ibrahim Sammour <abesammour@yahoo.com>
**Cc:** ratajmi@aol.com <ratajmi@aol.com>
**Sent:** Friday, October 11, 2024 at 03:20:13 PM EDT
**Subject:**
 Voicemail 10/11/24

Good afternoon Mr. Sammour,

I have listened to the voicemail you left Mr. Rataj today. The information you stated in your message is 100% inaccurate.

I do not know how to make it any clearer for you.  We held a meeting at Mr. Rataj's office to discuss the indictment against you and the evidence the government will present at trial. You have requested a trial in this matter, and we will be prepared.

In our phone call yesterday, I told you at least 10 times that I did not hear Mr. Rataj ask you for proof that you refused visits. I told you that a question was asked because your defense team wanted to know if there was ever a time you refused to see a patient you knew was not homebound - information that would be helpful in your defense. You did not like the answers I provided and repeatedly asked the same questions over and over again in an attempt to create conflict.

You have chosen to disparage Mr. Rataj and myself at every step of our representation. You refuse to focus on the defense of your case and instead want to focus on creating controversy. The judge has made it clear that you will not get another court appointed attorney, you can choose to hire another lawyer if you do not wish to proceed with our representation or you can

work with us in the defense of this case. Being the loudest person in the room will not make the indictment go away.

Moving forward, communication in your case will strictly be about the defense of the case. Mr. Rataj and I will not engage in phone calls to further your plan to try to derail the defense. Emails/messages that focus on your made-up conspiracy theories will not receive a response from either of us. They only serve as a distraction from your case.

You have repeatedly lied about your review of the discovery and the information contained therein. When shown the pages of discovery that contain statements you accused us of making up, you still refuse to accept reality.

You need to review your discovery and work with your attorneys so that you can defend these allegations at trial.

I will see you at court next Wednesday for your hearing.

Thank you,

**Leanna R. Belcher**


**Counsel Misrepresentation of Medicare Law and Judicial Precedent**

Leanna Belcher's email contains a critical legal error that underscores a broader pattern of misrepresentation by both Ms. Belcher and Mr. Rataj. Her statement — that my defense team sought to know whether I ever refused to see a patient I "knew was not homebound" — reveals a fundamental misunderstanding of the lawful Medicare standard. **Under federal law, homebound status and eligibility for Medicare home health services must be certified solely by a physician or allowed practitioner.** As stated in 42 C.F.R. § 424.22, Medicare payment is authorized only when a physician certifies that the patient is confined to the home, requires skilled services, and has a valid plan of care. The regulation does not grant certification authority to registered nurses, CMS contractors, or prosecutors. Their roles may involve assessment or documentation, but they do not carry legal weight in determining eligibility. Any suggestion that I, as a registered nurse, had the authority or obligation to override a physician's

certification reflects a misapplication of Medicare law and undermines the statutory framework governing home health care.

Under Medicare law, an RN's Start of Care (SOC) is not a certification of eligibility for home health services. This was affirmed in *Prather v. Brookdale*, where the Sixth Circuit clarified that CMS's informal expectations cannot override statutory or regulatory requirements. The judiciary has repeatedly condemned CMS's unlawful sub-regulatory guidance — including its attempt to treat RN SOC as certification — and ordered CMS to revise its benefit manual policies, which were based on guidance lacking lawful authority.

Despite these rulings, CMS continues to publish rejected and invalid sub-regulatory guidance on its website, presenting it as if it were legitimate law. This guidance unlawfully alters substantive payment standards — standards explicitly rejected in *Jimmo v. Sebelius*, which clarified that Medicare coverage does not depend on a patient's potential for improvement. DOJ then enforces this guidance as the basis for criminal prosecution, even though it has been judicially invalidated. This enforcement directly contradicts the Court's directive in *Jimmo*, which ordered CMS to abandon its unlawful "Improvement Standard" and honor medical necessity as determined by the certifying physician.

Ms. Belcher and Mr. Rataj's reliance on CMS's invalid guidance — and their refusal to acknowledge the binding nature of *Jimmo*— further demonstrates their failure to apply the correct legal standards. Their unprecedented argument in court, citing my peaceful protest and publication of protest photos as justification for a forensic psychiatric evaluation, misled the Court. Their claim that *Jimmo* is an unpublished civil case irrelevant to criminal defense is both factually and legally incorrect. Multiple rulings have affirmed *Jimmo*'s applicability to all Medicare providers and its relevance in both civil and criminal contexts.

**This pattern of misrepresentation — both in court proceedings and written communications — undermines the integrity of the defense and violates my constitutional right to effective assistance of counsel.** It also reinforces the broader issue: DOJ's enforcement of CMS's rejected sub-regulatory guidance places providers in legal jeopardy for complying with federally mandated standards.

In the government's *Motion in Limine No. 2*, DOJ argues that I, Sammour RN, should be precluded from referencing CMS's unlawful conduct — even though the judiciary has condemned CMS's sub-regulatory guidance and ordered its revision. DOJ's position seeks to suppress judicially affirmed facts: that CMS continues to publish rejected guidance and uses it to deny payment and pursue criminal charges. This conduct is not accidental — it reflects a deliberate strategy by CMS to insert unlawful requirements, including a recast narrative around Face-to-Face (F2F) encounters, which indirectly invalidates the certifying physician's lawful determination by tying it to RN SOC.

**This unlawful insertion into the F2F narrative has created a dangerous and unsustainable business model for home health agencies.** Agencies are now required to deliver care, pay staff, and absorb operational costs upfront — while waiting for CMS to retroactively decide whether to reimburse or deny payment. By embedding sub-regulatory conditions into the F2F documentation process, CMS has shifted the burden of eligibility determination onto providers, despite the statute assigning that role exclusively to physicians. This not only unlawfully alters substantive payment standards, but also exposes agencies to severe financial risk and legal liability — with ripple effects across the entire health system nationwide. Even when providers fully comply with federal law, they remain vulnerable to nonpayment or prosecution based on guidance that lacks legal authority. In cases like mine, this is the most urgent and consequential issue.

This principle is directly relevant to *Jimmo*, where CMS's denial of payment was not based on lack of improvement, but on post-hoc maneuvers under **PDGM** and **LUPA** thresholds. These mechanisms deny payment even when patients improve, by imposing arbitrary visit caps and denying revenue for visits beyond the fifth — regardless of medical necessity or physician certification. Providers receive no credit or reimbursement for medically necessary care delivered above the LUPA threshold, despite full compliance with CMS's own unlawful requirements.

**Justice Gorsuch's opinion in *Azar v. Allina* reinforces that CMS cannot impose substantive legal standards without formal rulemaking and public comment.** The Supreme Court rejected the government's argument that CMS's guidance was merely interpretive, holding instead that even minor changes in Medicare policy must follow the rulemaking process because they affect "millions of people and billions of dollars."

This message was echoed in *United States v. Ganji*, cited in the *Yolanda Hamilton* case, where the Fifth Circuit clarified that **only the physician's certification carries legal weight**. The court emphasized that CMS's sub-regulatory expectations — including those related to F2F documentation — cannot substitute for statutory authority.

Ibrahim Ammori
13340 Leonard st Apt 108
Dearborn, MI 48126