UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

                    Plaintiff,

-v-                                        Case No. 23-cr-20062


IBRAHIM SAMMOUR,

                    Defendant.
_____/


STATUS CONFERENCE & DEFENSE COUNSELS'
MOTION TO WITHDRAW

BEFORE THE HONORABLE MARK A. GOLDSMITH

Detroit, Michigan, Tuesday, April 28th, 2026.


APPEARANCES:

FOR THE PLAINTIFF:          JEFFREY ALAN CRAPKO
                           U.S. DEPARTMENT OF JUSTICE
                           211 West Fort Street
                           Suite 2001
                           Detroit, MI 48226

FOR THE DEFENDANT:          MICHAEL A. RATAJ
                           500 Griswold Street
                           Suite 2450
                           Detroit, MI  48226

FOR THE DEFENDANT:          LEANNA R. BELCHER
                           Belcher Law, PLLC
                           14290 Northline Road
                           Southgate, MI  48195


David B. Yarbrough, CSR, FCRR
Official Court Reporter
(313) 234-2619

TABLE OF CONTENTS

PAGE

WITNESSES:

EXHIBITS

(Identified)          (Admitted)

Detroit, Michigan.

Tuesday, April 28th, 2026.

At or about 1:10 p.m.

-- --- --

THE CLERK OF THE COURT:  The United States District Court for the Eastern District of Michigan is now in session, the Honorable Mark Goldsmith, United States district judge, presiding.  The Court calls case number 23-cr-20062, defendant number five, United States of America v. Ibrahim Sammour. Counsel, please Stout your appearances for the record.

MR. CRAPKO:  Good afternoon.  Jeffrey Crapko on behalf of the United States.

MR. RATAJ:  Good afternoon, your Honor.  Mike Rataj, Leanna Belcher on behalf of Mr. Is more.

THE COURT:  All right.  Good afternoon.  Have a seat. All right, I wanted to cover a few matters at this conference. The report came back and I want to find out how you want to address the issue of competency at this point.  Mr. Crapko, how does the government want to address it?

MR. CRAPKO:  Your Honor, would you like me to remain seated?

THE COURT:  Yes, you can.  I just want you in front of a microphone.

MR. CRAPKO:  Your Honor, at this point we've received the report dated March 7th -- March 13th, 2026 by forensic unit

psychologist Caitlin Nelson.  Mr. Sammour if the Court remembers was evaluated first in 2023 and then again in 2026 and the reports agree on the basic facts that Mr. Sammour is competent to proceed, he understands the proceedings against him.  He appears to have a personality disorder, both psychologists found that, that renders him argumentative and somewhat harassable when his world view is challenged, but does not impact his ability to understand proceedings or to participate in his defense.

Both reports noted that his actions are volitional in nature, he understands what he's doing, he's choosing to act in the way he acts and that he can proceed, he can understand the case against him and then the choices he makes after that are of course his own to make, however obstructionist they may at times be.

The government's position is at this point is that the Court may rule on Mr. Sammour's competency.  It has no competing information suggesting that he's incompetent.  Two psychologists have evaluated him.  Both have found that he's competent to proceed than fact the 2006 report notes that he's likely to remain competent for the duration of his legal proceedings and that's on the final page under prognosis, so for this reason we feel, the government feels that the Court should find Mr. Sammour competent to proceed.  Trial is set for October 6th, 2026.  This case has lingered for some time and

the government's position is that we should proceed to trial on that October 6th date.

THE COURT:  All right, thank you.  Mr. Rataj?

MR. RATAJ:  Thank you, Judge.  Ms. Belcher and I have had the opportunity to read the report as well.  We don't take issue with anything that Mr. Crapko has said.  Obviously the doctors, this is the second doctor now that has found Mr. Sammour competent so we'll have to stipulate to the finding of competency, but I would point out to the Court that according to doctor Nelson, she opines in the last, second or third, last sentence in the prognosis he is likely to continue to become argumentative, noncooperative and insistent when he perceives injustices against him, others disagree with him or he receives feedback that requires him to acknowledge any personal shortcomings or wrongdoings.  I would just point that out for the record, Judge, because I feel that no matter what happens here, I think that we're going to be in the same spot we were when we had the competency hearing.  So although I can't disagree with the finding of competency, umm, I certainly don't think that our continued participation in this case is, umm, in Mr. Sammour's best interest.

THE COURT:  That's a separate issue.  Right now I'm just dealing with competency.

MR. RATAJ:  I understand, Judge.  We'll stipulate to the finding of competency.

THE COURT:  All right.  Well, I have reviewed the report and I think the conclusion it reaches is well supported. Both sides believe it's a correct conclusion that defendant is competent, that he understands the nature of the proceedings, he's able to assist in his defense.  He may have other mental health issues, but they don't bear on the issue of competency so I do find that he is competent and now the question becomes how to proceed.  So Mr. Rataj, did you want to say something regarding your continued representation?

MR. RATAJ:  Well, yeah, Judge.  May I approach the podium, please?

THE COURT:  Go ahead.

MR. RATAJ:  Before we get into that issue, your Honor, if I may, Mr. Sammour has been out on bond on this case for, for quite a long time and obviously there was an issue for him reporting to MCC Chicago as ordered by your Honor.  He was picked up by the marshals, he was transported.  He has completed the competency evaluation and he's still in custody, so before I get into the issue of whether we can continue representing him, I would respectfully request that Mr. Sammour be released and bond continued.

THE COURT:  Well, let me ask if the government's got a view of that.

MR. CRAPKO:  Your Honor, Mr. Sammour of course failed to abide by the Court's order twice regarding his

self-reporting date.  He's expressed in his various, what I'll term hybrid representation pro se filings that that was due to a dental issue.  Be that as it may, he still is required to follow court orders.

I would hope at this point that he understands the gravity of court orders and that he doesn't view them as optional in the future.  I recognize that Mr. Sammour has had a history of being out on bond.  He has appeared for all court appearances so I think that weighs in his favor.  I would note also to the Court that and while they're separate issues, to the extent that Mr. Sammour ends up representing himself in this matter, there were logistical difficulties that that presents as far as his review and preparation for the forthcoming trial if he remains in custody.  I note that just because I see the issues as somewhat interconnected as one impacts the other, but at this time the government doesn't object if the Court chooses to continue Mr. Sammour on his bond albeit I would suggest for the Court a stern warning that future court orders are to be followed strictly to the letter.

THE COURT:  All right.  Mr. Sammour, if I do have you put back on bond, you understand you will have to comply with all of the conditions that previously existed?

THE DEFENDANT:  Yes, sir, your Honor.

THE COURT:  Okay and are you agreeing to do that?

THE DEFENDANT:  Yes, your Honor.  I've been doing

that.

THE COURT:  Okay.  I don't want to talk about the past now, I just want to talk about the future.  You're going to have all the conditions you had before and you're going to have to comply with them.

THE DEFENDANT:  Yes, your Honor.  Can I just raise one issue to --

THE COURT:  No, I just want to know if that's what you're willing to tell me right now in the courtroom their going to abide by all the conditions of the bond?

THE DEFENDANT:  Yes, your Honor.  I've been doing that and I will.

THE COURT:  Okay.  All right, now let me ask pretrial are there any additional conditions that we need to consider?  If you'd just step toward the microphone and you can have a seat so you're right in front of the microphone.  Have a seat and just tell us your name first and then if you'd answer my question about whether there are any additional conditions other than the ones that existed before?

PRETRIAL OFFICES OFFICER HARMON:  Good afternoon, your Honor.  Brian Harmon with pretrial services for the record.  Pretrial services does not have any recommendation to add any, add or delete any conditions at this time.

THE COURT:  All right.  So I'll agree with the defense request and we'll have Mr. Sammour placed back on bond

with all the prior conditions that existed before.  Now Mr. Rataj, did you want to address the issue of representation?

MR. RATAJ:  I do, Judge.  So, your Honor, as the Court may recall, I was appointed to represent Mr. Sammour pursuant to the Criminal Justice Act back in I believe it was October of 2023.  I can't remember exactly when Ms. Belcher was appointed as my co-counsel, but it was probably about a year and-a-half or so after that.  At that time when I was initially appointed in October of 2023, Judge, I was the third lawyer that had been appointed to represent Mr. Sammour.  Now I've been involved in the case since that time and we've worked the case up and clearly Mr. Sammour does not like the way that I'm doing things as evidenced by the multiple filings that he has filed in this case.

The only problem that we have, Judge, is -- well, we have a lot of problems to be quite frank with your Honor.  We have the third and fourth lawyer as being appointed.  Mr. Sammour has filed pleadings where he stated that we -- that he no longer wants Ms. Belcher and I to continue on as his attorney.  My problem -- my fear is, Judge, based on Mr. Sammour's history, based on what Dr. Nelson has opined in her report, that if your Honor relieves Ms. Belcher and I of our duties and appoints new counsel, I have a feeling that the Court, Mr. Sammour, the government are going to be in the same spot that we're in today.

I would point out that at the time, excuse me, your Honor. At the time that your Honor allowed Mr. Magidson to withdraw from the case, your Honor had told Mr. Sammour that I'm going to put you on and I'm quoting, your Honor, "I'm going to put you on notice that we are not going to be appointing more lawyers because you decide you disagree with what the new lawyer wants to do. You've had two lawyers. You're going to get a third lawyer and I'm not going to be inclined to appoint a fourth or a fifth lawyer. This is it. This is it."

And so I don't know where we go from here, Judge. I don't know how Ms. Belcher and I can stay on this case given the fact that Mr. Sammour has filed pleadings saying that he wants us off the case. He has filed grievances against Ms. Belcher and I with the Attorney Grievance Commission. He even sued us in this, in this court. I think your Honor actually was a named defendant in that case as well as the Attorney Grievance Commission. That case was in front of Judge DeClercq. She dismissed the case. The grievance that was filed against Ms. Belcher and I was basically dismissed.

I'm not sure where we go from here, Judge, because I don't want another lawyer on the federal panel to have to deal with what we've had to deal with for the last two-plus years, but at the same time I don't feel that pursuant to Mr. Sammour's Sixth Amendment rights Ms. Belcher and I can stay on the case and provide him with the effective assistance of

counsel.  So I think we have a, somewhat of a dilemma here, Judge, and I don't know what the answer is, but clearly Mr. Sammour has made it clear that he no longer wants Ms. Belcher and I to stay on as his attorneys, but if your Honor was inclined to appoint a fifth lawyer if you will, I don't think anything's going to change.

So my suggestion, Judge, and it's only a suggestion, I'm just a simple criminal defense attorney, he either represents himself or he goes out and he hires his own lawyer and your Honor can consider appointing standby counsel.  I think that's really the only solution, but I don't know how Ms. Belcher and I can stay on this case given the nature of the allegations that he's made against us and the grievance and the civil complaint and everything else that he's filed in front of this Court as well as in front of Judge McMillion on Mr. Sammour's other indictment.  So I don't have an answer, Judge, I'm only trying to make a record here.  I don't know where we go from here because I can say this, Judge, Mr. Sammour has been adamant about the defense that he wants to run in this case and I -- and myself and Ms. Belcher have told him ad nauseam that we are not going to run the defense that he wants to run because it has no basis in law, it has no basis in fact and we are officers of the Court, we took an oath and we can only advance arguments that are based in law or fact and what Mr. Sammour wants us to do would -- is something that I don't

think any lawyer on the panel or who practices in this court would even consider advancing.  So I don't know what to do, Judge, to be quite frankly or to be quite frank.

THE COURT:  Does the government have a view of this?

MR. CRAPKO:  Your Honor, the government does not normally take positions on a breakdown in the attorney/client relationship.  I would note though for the record that Mr. Sammour has chosen to file voluminous pleadings on this Court's docket, on Judge McMillion's docket which Mr. Rataj correctly noted as his second case against him and then also filed a lawsuit against Mr. Rataj, Ms. Belcher, the AGC and this Court in front of Judge DeClercq, so he's placed the breakdown in public view.

I agree with Mr. Rataj that the history of this case suggests that the Court has been quite firm that a revolving door of attorneys is not what the Sixth Amendment guarantees, there's a right to counsel, but it's not counsel of your choice which is apparently what Mr. Sammour seeks.  Lawyers have ethical duties to the Bar, to the Court to advance arguments grounded on in law and in fact.  Mr. Rataj has represented that whatever Mr. Sammour wants to do is not grounded in law or fact.

I do have a concern that appointing an additional attorney will then delay this matter further and that as we approach October 6th which the government quite firmly wants to

keep as the trial date in this case, it's been pending far too long, umm, there will be a flurry of filings acting out somewhat to what we saw last fall when this matter was sent to a competency hearing in the first instance or the in the second instance.  So I do share the concern in that regard.

I think that Mr. Sammour in multiple pleadings has also stated that he wishes to represent himself.  He's cited Feretta (phonetic) and I think that if that is indeed what Mr. Sammour wants, there is of course the, umm, the questions that are in the Court's Bench Book and I'm looking at United States v. McBride, 362 F3d, 360 that just notes that whenever and this is a quote, your Honor, "whenever a District Court in the Sixth Circuit is faced with an accused who wishes to represent himself, the Court must ask the defendant a series of questions drawn from or substantially similar to the model inquiry set forth in the Bench Book for United States district judges." There's a list of about 15 questions there with a caution that it's probably advisable to appoint standby counsel.  I think that the Court should conduct that inquiry with Mr. Sammour.

If the Court allows Mr. Rataj to withdraw and Ms. Belcher to withdraw based on the filings, I think that if the Court is inclined to appoint yet another lawyer from the CJA panel, I'm not sure that we'll find ourselves in a meaningfully different situation if Mr. Sammour is determined to represent himself and advance arguments that lawyers apparently are

unanimously declining to advance and the last thing I'll say on this point, your Honor, is Mr. Rataj and Ms. Belcher have been Mr. Sammour's attorney in this and another matter in front of Judge McMillion for the past two and-a-half years approximately.  They are as in command of the facts as any lawyer could hope to be in that time from my interactions with them.  They -- we've been able to discuss pretrial issues in a professional manner thoroughly.  I'm not sure that an additional lawyer is going to change that.

I think that there's still six months.  There's plenty of time if the Court does appoint somebody else, for them to get up to speed for an October trial, but at this point the government has a strong interest in not seeing that October 6th date adjourned.  The longer cases last lingering without a trial, the more complications the government faces and the more prejudices it faces in presenting its case and I think we're starting to run into that and I think we need to be prepared to proceed on October 6th as scheduled.

THE COURT:  In terms of full trial days, how long are you envisioning the trial?

MR. CRAPKO:  For full trial days, your Honor, I would estimate at the high end, your Honor, I think a week and-a-half.  I think a week to week and-a-half is probably sufficient.  It could be a little faster than that, your Honor, but I hesitate to over-promise and under-deliver.  I think part

of that also depends on who my opposing party is and whether certain things that are routine like evidentiary stipulations, exhibit stipulations are able to be entered into or if I'm calling every single foundational witness, I could see that elongating it past the one and-a-half weeks I've just estimated, however I do think that if the trial ran according to the government's hope and plans from thinking back a year ago, I think a week to week and-a-half is a pretty solid estimate.

THE COURT:  Okay.  Mr. Sammour, what do you want to say?

THE DEFENDANT:  Your Honor, I just want to just to start with one thing.  Mr. Rataj said that the grievance that I filed against both of them is dismissed.  No.  I have a letter from the Attorney Grievance Commission stating in crystal clear that Rataj is ineffective representation.  This means incompetence.  I have that letter, I came from the jail, I do not have it.  It's there.  I didn't want to post it and to send it to him at that time because I responded back to Attorney Grievance Commission asking them if if this is deliberate ineffective representation and it is deliberate ineffective representation.  What I presented for my defense, I stated it was under seal, I don't know why, however, my -- we started from Justice Gorsuch, we are not paid, we provid the services. I made enumerous papers, send it everywhere and I made a clear

presentation to the Sixth Circuit Court explaining everything, the thing is pending and we will wait for what is Court of Appeals who literally stated and of course which in the case which your Honor said it is severed case and cannot be used in the defense, Jimmo v. Sebelius and in that case, it is a civil case, a ruling from the Appellate Court clearly stating that the Court, the Appellate Court ordered CMS to revise its own self-created policy denying payment outside doulas commit the process required by the Congress.  Denial of payment affecting us, we're doing the work, we are not paid.  Not only we are not paid, we are losing and the patient are losing service.  This is the basis for everything.  You are accusing me of robbing with the care, why we are not paid?  We work and we are not paid.  It doesn't make sense with the civil or criminal, I work, I provide the service and I'm not paid.  That's not the Medicare, the CMS created it self-created policy making a change of payments.  A change of payments by CMS is a crime. The CMS cannot change payments by --

THE COURT:  Mr. Sammour, I'm going to have to interrupt because you're arguing your case now.  This is not the time to argue your case.  Right now we're trying to address the issue of whether Mr. Rataj should continue to represent you.  That's the issue we're talking about.

THE DEFENDANT:  Thank you, your Honor.  I just --

THE COURT:  Do you want Mr. Rataj to continue to

represent you?

THE DEFENDANT:  The way that Mr. Rataj was not going to go by the law that which Appellate Court is going to make ruling about it which the Attorney Grievance Commission made clear to him, I'll get this letter, I'll mail it to your Honor or I'll send it to him, the letter from the Attorney Grievance Commission, ineffective representation.  What do I need from ineffective representations making up all those evidence?  How is, the Attorney Grievance Commission is saying that.

THE COURT:  My question is a simple one.  Do you want Mr. Rataj to continue to represent you?

THE DEFENDANT:  If he is going to go with what the Attorney Grievance Commission said and what is presented I gave him and what I sent to the Sixth Circuit Judicial Court, that would be great, but if he is going to be against it, what's the sense of going -- he's not helping me.  He is going against the law and against me while he's saying that he's presenting the law.

I'm not here to say anything to anyone.  We provide the services your Honor and we lose money and we are not paid by Medicare.  It's not the problem with the care, CMS, they are going by the unlawful CMS, the problem is CMS, it's not the Medicare.  They want that they want me to comply with the rules.

THE COURT:  Okay, thank you, thank you.  Mr. Rataj?

MR. RATAJ:  Yes, Judge, so that the record is clear, on November 25 --

THE COURT:  Stay in front of the microphone, please?

MR. RATAJ:  I'm sorry?

THE COURT:  Stay in front of the microphone.

MR. RATAJ:  I'm sorry, Judge.  On November 25, 2025 I received a response from Cynthia C. Bullington, the assistant deputy administrator and Ms. Belcher received the same letter on the same date which states that, this is to Mr. Sammour, our office feels Michael A. Rataj has answered your allegations adequately, I am enclosing a copy of the answer for your review, we will take no further action.  So the Attorney Grievance Commission dismissed his grievance, end of story.

Secondly --

THE DEFENDANT:  I hired an attorney --

THE COURT:  Hold on, no.

MR. RATAJ:  The arguments that I think Mr. Sammour is stating has been discussed with Ms. Belcher and I over and over and over and over again and it's been explained to Mr. Sammour that what he's arguing makes no sense.  The case law that he cites, we actually gave to your Honor at the competency hearing and of course I'm not going to speak for the Court, but I believe that your Honor looked at some of those cases and saw that they have nothing to do with the price of tea in China which is whether or not Mr. Sammour conspired to commit

Medicare fraud with the other defendants in this indictment who have all pled guilty and are all prepared to testify against him.  So I'm not going to advance the defense that Mr. Sammour has I guess tried to explain to your Honor, has previously tried to explain to your Honor, has submitted in multiple pleadings, in pro se pleadings.  It makes no sense and I've told him over and over again I'm not doing it.

No lawyer in this district that practices in this building would ever consider advancing those arguments.  They would -- they could potentially be sanctioned by any judge in this building for advancing the arguments that Mr. Sammour wants advanced and I'm not doing it and I've told him that at least 1,000 times.

THE COURT:  All right.  So -- hold on --

THE DEFENDANT:  Your Honor, excuse me, your Honor --

THE COURT:  No, Mr. Sammour, wait.

THE DEFENDANT:  I just --

THE COURT:  Just wait.

THE DEFENDANT:  Okay, your Honor --

THE COURT:  Wait.  Mr. Rataj says he's not going to be advancing the arguments that you want him to make, so do you want him to represent you understanding that he will not advance the arguments?

THE DEFENDANT:  For sure no.

THE COURT:  Okay.  Now do you want to represent

yourself?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  All right.

THE DEFENDANT:  He is not working for my interest and he is saying that the letter --

THE COURT:  Hold on --

THE DEFENDANT:  -- I'll get you another letter from the Attorney Grievance --

THE COURT:  Please don't talk.

THE DEFENDANT:  Thank you.

THE COURT:  Hold on.

(Pause)

THE COURT:  All right.  Mr. Sammour, if you want to represent yourself, I'm going to have to ask you a number of questions.  So -- all right, will you raise your right hand?  Do you solemnly swear or affirm under penalty of perjury that the testimony you're about to give will be the truth?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  All right.  Now Mr. Sammour, you've said you want to represent yourself, so under the law I need to ask you a number of questions about that subject.  Have you ever studied law in a law school?

THE DEFENDANT:  Have I?

THE COURT:  Have you.  Have you ever studied law in a law school?

THE DEFENDANT:  Kind of.  I had one year of ficality of commerce in Egypt and we studied the international law regarding the sea and shipping and the trade and that stuff.

THE COURT:  So when you were in college in Egypt, you say you studied some law?

THE DEFENDANT:  Yeah.  It was in 1979.

THE COURT:  All right.  Other than that, have you studied law?

THE DEFENDANT:  On my own and with the case that I had I spent about 50,000 hour at least around that, I don't know exactly, but I spend numerous numbers of hours studying everything and look at the cases.

THE COURT:  Have you ever represented yourself in a case in court?

THE DEFENDANT:  Yes I did, your Honor.

THE COURT:  What kind of case?

THE DEFENDANT:  I represented myself one time in immigration case and the judge dismissed the case and I had three attorneys.  They were not helping me.  I fired them, I filed the grievance for them and they were going to squeeze me, the judge I represent myself and that from second, second time I, the judge dismissed the case.

One more over, the Wayne County prosecution office, they stole from me 300,000 dollar for the democrat republ -- campaign in time of Granholm and time of Duggans and somebody

give it to me closed account and they despite a jury trial for a court for a jury trial after three judge upheld the case, they didn't bring that defendant who donated the money to them while they were sending their interns to do political fundraising for democrats using illegal corruption for political interest to Granholm, Jennifer in that time --

THE COURT:  Just a moment.  Did you --

THE DEFENDANT:  I forward them --

THE COURT:  Pardon me just a moment.  Were you a party to that lawsuit?

THE DEFENDANT:  Yes, I was a victim.

THE COURT:  Okay.

THE DEFENDANT:  And I filed a complaint against the prosecution office 'cause Attorney General, they were democrats, he was republican, Mike Cox give me --

THE COURT:  So I'm asking is now --

THE DEFENDANT:  Yes, I did --

THE COURT:  Hold on.  Just listen.  Were you a party to a lawsuit meaning did you file the lawsuit or defend against the lawsuit?

THE DEFENDANT:  I was a victim, I was defending myself.

THE COURT:  Okay.

THE DEFENDANT:  And I was trying to complain --

THE COURT:  Did you represent yourself in that case?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Okay.  Did you represent yourself in any other case?

THE DEFENDANT:  Can I mention something in this one very important?

THE COURT:  I want to know if you represented yourself in any other case?

THE DEFENDANT:  Umm, I really do not think more and so the twice it could be.  Yeah, I did, once in an insurance case, yes.

THE COURT:  Is that a case that went to court?

THE DEFENDANT:  Yeah, it was in court.  I was in front of Judge Worfield Moore.

THE COURT:  Okay.  Any other cases?

THE DEFENDANT:  That's basically.

THE COURT:  All right.  Now I'm going to ask Mr. Crapko if we have an amended indictment or a superseding indictment or are we still dealing with the original indictment from February 1 of 2023?

MR. CRAPKO:  Your Honor, I believe it's just the original indictment in this case.  Umm, no, yeah, we haven't superceded in this case.

THE COURT:  And Mr. Crapko, correct me if I'm wrong, but I believe Mr. Sammour is named as a defendant only in count one; is that right?

MR. CRAPKO:  That's correct, your Honor.

THE COURT:  All right and what is the maximum penalty that Mr. Sammour would face if convicted on count one?

MR. CRAPKO:  Count one charges conspiracy to commit healthcare fraud, a violation of 18 U.S.C., Section 1349.  The maximum term of imprisonment if convicted is 10 years, a 250,000 dollar fine or both.

THE COURT:  And supervised release as well?

MR. CRAPKO:  Yes, a supervised release term of up to three years and mandatory restitution if found.

THE COURT:  So Mr. Sammour, you understand that you're charged in this case in count one with healthcare fraud conspiracy?

THE DEFENDANT:  I don't accept any money.  Yes, I understand that --

THE COURT:  Can't hear you.

THE DEFENDANT:  Okay.

THE COURT:  Do you understand that you are charged in count one of the indictment in this case with healthcare fraud conspiracy?

THE DEFENDANT:  I understand that, your Honor, very well and I do not have a penny.

THE COURT:  I'm sorry, I didn't hear the last thing you said.

THE DEFENDANT:  I do not have a penny, you know, that

I'm --

THE COURT:  You don't have a penny, okay.  I'm not asking how many dollars or pennies you have.  Wait for the question and just answer my question, okay?

THE DEFENDANT:  Okay, your Honor.

THE COURT:  All right and I'm going to just repeat what Mr. Crapko said.  If you are convicted, then under the statute the maximum penalty would be 10 years in prison.  Do you understand that?

THE DEFENDANT:  Shoot me.

THE COURT:  Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  You also can be fined up to 250,000 dollars.  Do you understand that?

THE DEFENDANT:  I understand that, your Honor.

THE COURT:  And do you understand that there is a mandatory special assessment of 100 dollars that's required if you're convicted?  Do you understand that?

THE DEFENDANT:  How much?

THE COURT:  100 dollars special assessment.

THE DEFENDANT:  Okay.

THE COURT:  Do you understand that?

THE DEFENDANT:  Okay, yes, your Honor.

THE COURT:  All right.

THE DEFENDANT:  I didn't hear --

THE COURT:  You also can be placed on supervised release for up to three years.  Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Supervised release means that after you serve any prison term that you might be sentenced to, you are released back to the community.  You have certain conditions that you have to follow and if you violate any of those condition, you could be sent back to prison to serve additional time.  Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Also if there's any loss to any victim of the offense, you would be liable to pay for any loss that was incurred by any victim.  Do you understand that?  That's called restitution.  Do you understand what I just said?

THE DEFENDANT:  I understand restitution, yeah.

THE COURT:  Okay.  Now under the law, there's something called sentencing guidelines.  Those are advisory and not mandatory and I am required to consider the sentencing guidelines, but I don't have to follow them.  Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  You understand that if you represent yourself, I'm not going to be able to give you any kind of advice?  Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  All right.  In other words, you are going to be fully responsible for doing whatever it is that needs to be done to represent you in this case.  You can't look to the Court for any suggestion or advice about anything in terms of the case.  Do you understand that?

THE DEFENDANT:  Okay, your Honor.  Yes, your Honor.

THE COURT:  You understand?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Are you familiar with the federal rules of evidence?

THE DEFENDANT:  I read them.

THE COURT:  All right.  Do you think you understand all the federal rules of evidence?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Now you understand that the government is going to be represented by an attorney?  You understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And the government attorney went to law school, is trained in the law and has many years of experience trying cases in front of a jury.  Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  You understand that he probably has greater familiarity with the law than you do?  Do you understand that?

THE DEFENDANT:  I understand also the jury, they are

not attorneys.

THE COURT:  I understand.  I'm not asking you about the jury.  I'm asking you if you understand that the government is going to be represented by an attorney who has in all likelihood far greater familiarity with the law than you do?

THE DEFENDANT:  That's 100 percent true.

THE COURT:  Okay.  Are you familiar with the federal rules of criminal procedure?

THE DEFENDANT:  Not 100 percent, but I can look at them again.  I can understand, yeah, when I read them.

THE COURT:  And do you understand that the attorney for the government is far more familiar with the federal rules of criminal procedure than you are?  Do you agree with that?

THE DEFENDANT:  They're familiar?  Yeah, they are familiar, sure.

THE COURT:  Okay.  More familiar than you, you understand?

THE DEFENDANT:  Yes, they are more familiar than me.

THE COURT:  And more familiar than you regarding the federal rules of evidence.  You agree with that?

THE DEFENDANT:  Yes.

THE COURT:  You understand that you may be at a very serious disadvantage in representing yourself because you're not an attorney and the government is represented by an attorney who's far more familiar with the law and how trials

are conducted?  Do you understand all of that?

THE DEFENDANT:  Mr. Rataj --

THE COURT:  I'm just asking if you understand that.

THE DEFENDANT:  Yes I understand also Mr. Rataj is an attorney, but he is ineffective and the Attorney Grievance Commission saying he's not helping me.

THE COURT:  Right now we're talking just about you because you said you want to represent yourself.

THE DEFENDANT:  Yes, and I tell you --

THE COURT:  That's why I want you to understand what it is that you'd be getting into by representing yourself. That's why I'm running through these questions, Mr. Sammour.

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Now the law does say that I must tell you that I believe you are going to be at a serious disadvantage in representing yourself because of the fact that you're not trained as a lawyer, you don't have experience as a lawyer, you don't understand all of the rules that apply in this case and you're going to be defending yourself in a case where the other side, the government, is represented by someone who is trained in the law and is experienced in the law.  So I am telling you that it is my opinion that you are going to be at a serious disadvantage if you represent yourself.  Do you understand what I just said?

THE DEFENDANT:  I do not think that I'll be worse

than with Rataj.  That means yes, I understand, your Honor.

THE COURT:  All right.  You've told me that you want to represent yourself.  Is anybody threatening you in any way to get you to make that request to me?  Anybody threatening you in any way?

THE DEFENDANT:  The reason I say it because --

THE COURT:  No, listen to my question.  Listen to my question.  Is anybody threatening you to get you to say that you want to represent yourself?

THE DEFENDANT:  Threatening me, no, but I know that the Court told me that they're not going to give me another attorney after that.

THE COURT:  There's not going to be another attorney. I've already told you that.  Mr. Rataj is your third attorney. I told you that before and Mr. Rataj is an extremely experienced, extremely knowledgeable attorney.  I think you're making a serious mistake by trying to represent yourself as opposed to have Mr. Rataj represent you, but you've told me that you want to represent yourself.

THE DEFENDANT:  But the Attorney Grievance Commission didn't say that.

THE COURT:  I'm not interested now in what the Attorney Grievance Commission said.  Is anybody forcing you to get you to request to represent yourself?  Anybody forcing you?

THE DEFENDANT:  No, your Honor.

THE COURT:  Okay.  Are there any other questions either counsel would like me to put to Mr. Sammour?

MR. CRAPKO:  If I just may have one moment, your Honor?

THE COURT:  All right.

(Pause)

MR. CRAPKO:  The only questions I see your Honor is an admonishment that the rules will not be relaxed, technical rules or the federal rules of evidence in criminal procedure will not be relaxed for Mr. Sammour's benefit even if he proceeds pro se.

THE COURT:  Okay.  Mr. Sammour, you need to understand that I'm going to apply the law in the same way I would apply it here whether you were an attorney or not.  In other words, the rules are the rules.  You're going to have to follow them, whatever the rules of procedure are, whatever the rules of evidence are, they're not going to be applied differently to you, more leniently to you because you are not an attorney.  Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Anything else, Mr. Crapko?

MR. CRAPKO:  Nothing else from the government.

THE COURT:  There's one other issue I want to cover and that's the issue of standby counsel.  So Mr. Sammour, I can appoint an attorney who's called a standby counsel.  It will

not be his or her job to represent you, it will be his or her job to be available.  If you have questions, you are able to talk to standby counsel, but that attorney is not representing you at trial.  You're going to be the one to stand up, ask questions, make an opening statement, closing argument.  He's not going to be or she's not going to be preparing this case for trial.  Do you understand what I mean by standby counsel?

THE DEFENDANT:  Yes, I read about that.

THE COURT:  Okay.  Is that something you would want me to do?  Would you want me to appoint you standby counsel?

THE DEFENDANT:  If he will be like Rataj, I do not need him.  If it's Rataj, I do not need him.

THE COURT:  All right, but if it's not Mr. Rataj, would you want me to appoint standby counsel?

THE DEFENDANT:  To be honest with you, most likely no.

THE COURT:  So your answer is you don't want me to appoint someone?  You said most likely, but I need to know yes or no.

THE DEFENDANT:  No.

THE COURT:  Okay.  Does the government have any view on that issue?

MR. CRAPKO:  Yes, your Honor.  I think standby counsel is advisable.  Whether Mr. Sammour chooses to speak with them or consult with them is of course up to him if he's

representing himself pro se, but I think that if we have a trial in this case as it looks about a 100 percent certainty that we will, umm, if the Court in the course of the trial finds itself confronted with a situation in which Mr. Sammour can no longer proceed pro se, he still needs to have a representation and I think standby counsel should be able to step in if that exists.  I recall from reading the case law that that was one function of standby counsel.  I of course am offering to prediction of how things may proceed, but those situations have been confronted by, by courts in the past and I think having somebody who's there is advisable.

THE COURT:  All right.  Based on Mr. Sammour's testimony here in open court -- well, I'm going to ask one more question.  Mr. Sammour, you have listened to all of my questions; you've answered them.  You understand all of the risks and dangers of representing yourself.  You've heard my advice to you that you're making a very dangerous decision by representing yourself.  I want to ask you now having heard all of this, do you still want to represent yourself?

THE DEFENDANT:  Can you tell me, your Honor, what you need me to do?

THE COURT:  I'm sorry?

THE DEFENDANT:  Tell me exactly.  You -- seems to me you are insisting to get Rataj back to the situation it seems. I would like to either --

THE COURT:  I'm not trying to get you to do anything. You said you wanted to represent yourself, the law says I need to ask you a lot of questions which I just did and the final question is now that you've heard all of the questions and you understand the risks and the dangers, do you still want to represent yourself?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Okay.  Then I'm satisfied that Mr. Sammour understands the dangers and the risks of representing himself and he's decided nonetheless to do that, so I'm going to grant his request to represent himself.  I'm going to relieve Mr. Rataj and co-counsel.

MS. BELCHER:  Thank you, your Honor.

THE COURT:  I am going to appoint a standby counsel. I believe the government is correct that the standby counsel will serve the valuable purpose of being available should Mr. Sammour during the course of trial decide not to continue to represent himself or be unable to represent himself, we'll have an attorney available to step in and represent him in that possibility.  Mr. Sammour doesn't have to consult with him, doesn't have to ask him for any assistance, but he'll be or she will be available so that the trial can be completed on a timely basis.

THE DEFENDANT:  Thank you, your Honor.

THE COURT:  All right.  Moving forward then, let's

take care of a few scheduling issues.  The trial is now set for October 6th.  We're going to have to have a final pretrial conference.  I don't believe if we, we probably did set one.

MR. CRAPKO:  May I check my phone, your Honor?

THE COURT:  Yes.

(Pause)

THE COURT:  Looks like we set September 22nd?

MR. CRAPKO:  That's exactly what I just found, your Honor, yes.

THE COURT:  All right.  Now I'm thinking it might be a good idea to advance that given that we have Mr. Sammour representing himself and that's pretty close to our trial date.

MR. CRAPKO:  I agree, your Honor.

THE COURT:  Mr. Crapko, do you want to do it as early as later in July, toward the end of July?  I could do it the end of July or I could do it the first week in August.

MR. CRAPKO:  Umm, may I consult my other phone for a moment, your Honor?

THE COURT:  Yes, go ahead.

MR. CRAPKO:  Thank you.

(Pause)

MR. CRAPKO:  You mentioned the first week of August, your Honor.  That appears to be free for me.

THE COURT:  All right.  What about Monday, August 3, does that work for you?

MR. CRAPKO:  Yes, your Honor.

THE COURT:  Are you free in the morning?

MR. CRAPKO:  Yes, your Honor.

THE COURT:  Okay.  Well, let's set it for 9:30 then on August 3 and I would suggest Mr. Crapko that you prepare jury instructions a whole lot earlier than you normally would so they can be sent to Mr. Sammour for his review and his input.  I'd like those well in advance of the final pretrial conference, so when do you think you'd be ready to furnish them to Mr. Sammour and then --

MR. CRAPKO:  I would suggest, umm, about July 7th?

THE COURT:  All right and will you send us a copy as well --

MR. CRAPKO:  Yes.

THE COURT:  -- so that I can see what it is you're furnishing to him?

MR. CRAPKO:  Does the Court wish me to file them on the docket as a proposed jury instructions or send them to chambers?

THE COURT:  Well, you can submit them to chambers because I'd like to see if there are any issues with you and Mr. Sammour, maybe you'll work them out and they'll turn into stipulated instructions.  If they don't, then you'll just get further word from me.  You'll let me know that the two sides couldn't agree about something and then we'll issue an order

about what to do in that event.  Typically when parties don't agree, then they will file disputed instructions and then usually they agree on something and they'll file the stipulated ones, but let's see if you folks are in agreement as to how many you disagree about, if any, okay?

MR. CRAPKO:  Yes, your Honor.  Just so I understand, I'm to have proposed jury instructions to Mr. Sammour on July 7th with a copy to the Court and then we will determine by the final pretrial whether there's disputed instructions?  Is that correct?

THE COURT:  Well, I'm going to ask you to try to report back before the final pretrial --

MR. CRAPKO:  Yes.

THE COURT:  -- so it will be helpful if at least two weeks before the final retrial conference you could file something and say the government proposes this and Mr. Sammour agrees about certain ones, which ones, disagrees about other ones and you can give me a road map so I'll be prepared at the final pretrial conference to rule on what's going to be -- what will be the jury instructions in our case, all right and of course that will be subject to change depending on the proofs at trial.

All right, are there any other items that we want to front-load in this process?  I believe we've gone through all the motions at this point.  Does the government want to file a

motion in limine?

MR. CRAPKO:  I believe the government already filed its motions in limine and I believe Mr. Rataj responded.  Your Honor, I would suggest a date by which we file perhaps a supplemental motion in limine now that Mr. Sammour is representing himself, I could imagine that there might be some issues we want to brief for the Court in advance and I would also ask that any motion deadline or cutoff be applied strictly to Mr. Sammour so that we don't have serial filings, umm, such that Mr. Sammour understands that he has a certain date to bring motions to the Court, there's a date by which a response is required and then no further motions will be entertained without good cause shown which I believe is the Court's normal practice, but perhaps need to be articulated here to Mr. Sammour and I would suggest as a corollary to that, your Honor, I think if motions are due by July 7th, that's sufficient time in advance of the final pretrial though of course I'd defer to the Court on scheduling issues.

THE COURT:  All right, so I'm going to allow each side to file a motion in limine.  You can raise whatever issues you want.  You can have 25 pages, no more than that.  It will be due July 7.  Responses will be due by July 21.  I'm going to strictly enforce those deadlines so don't miss them.

THE DEFENDANT:  Can I get the --

THE COURT:  One motion in limine, you can raise any

issue you want and it's limited to 25 pages.  Mr. Sammour, did you want to say something?

THE DEFENDANT:  Can I have a piece of paper and a pen, please?

THE COURT:  All right.  Can counsel give Mr. Sammour a piece of paper?

MS. BELCHER:  Yes, your Honor.

THE DEFENDANT:  I heard seven and the 21 of July the time to apply and the time to deadline of the motions.

THE COURT:  Motions are due July 7.  Responses to the opposing party's motions will be due July 21.

THE DEFENDANT:  Oh, you will write it for me?  Thank you.

THE COURT:  I'm going to be issuing an order so you'll be getting an order.

THE DEFENDANT:  Okay.

THE COURT:  And we will need an address --

THE DEFENDANT:  For me?

THE COURT:  -- for you because we're going to be sending you things.

THE DEFENDANT:  Umm, my e-mail address, they have it.

THE COURT:  Mr. Rataj, will you furnish the Court with the contact information for Mr. Sammour?

MR. RATAJ:  Yeah, we're going to have to have Mr. Sammour your Honor write that down on this piece of paper so

that --

THE DEFENDANT:  You have it already.

THE COURT:  All right.  If you'll write down your address, Mr. Sammour, the U.S. mail address and your e-mail address and a phone number at which you can be reached, all right?  Three things.  I want the e-mail address, I want the street address and I want a phone number, okay?

THE DEFENDANT:  It's in the record, your Honor, but I will do it again.

THE COURT:  All right.  Are there any other dates, Mr. Crapko, that we should put in our schedule?

MR. CRAPKO:  I think if we, umm, perhaps the exhibit list and the government's proposed exhibits.  Just to make the record clear, I would suggest in advance of the final pretrial conference, but perhaps not as early as July 7th, so perhaps two weeks in advance on July 20th?  Is that acceptable to the Court?

THE COURT:  Okay, two weeks before, that's July 20.  Is that going to be exhibits and witness lists?

MR. CRAPKO:  Yes, an exhibit list and a witness list.

THE COURT:  Okay and do you want the exhibits exchanged by that point as well?

MR. CRAPKO:  Umm, sorry, your Honor, I'm considering.  Yeah, I think we can, we can send him our exhibit list or our exhibits, excuse me.  I misspoke.  Our exhibits.

THE COURT:  All right.  So July 20 each side will be filing an exhibit list and a witness list and also sending the exhibits themselves to the other side.  That's going to happen by July 20.  Mr. Crapko, anything else?

MR. CRAPKO:  I think, does the Court want proposed voir dire or will the Court conduct voir dire?

THE COURT:  Well, I'm going to conduct it, but I typically ask for proposed voir dire just to see what the lawyers are going to be asking or in this case it'll be the defendant, so let's do that as well by July 20, okay?  Any questions you want to ask the proposed jurors, the prospective jurors during jury selection, I need to see those proposed questions by July 20.  That's called proposed voir dire and then I will talk about that at our final pretrial conference, let you know if I'm going to be agreeing or disagreeing about those questions that you want to ask.  Anything else, Mr. Crapko?

MR. CRAPKO:  Not as it concerns trial logistics, your Honor.

THE COURT:  All right.  Mr. Sammour, do you have any other items for the schedule?

THE DEFENDANT:  Thank you very much.  I think I understand.

THE COURT:  Okay.  Mr. Rataj, did you want to say something?

MR. RATAJ:  Just briefly, Judge.  I know that your Honor's going to be submitting an order of appointment for standby counsel.  Just for the record I will work with that standby counsel to get them whatever information that they'll need to get to Mr. Sammour or to discuss with Mr. Sammour.  I will tell your Honor that the discovery in this case is voluminous to say the least, so I'll do my level best to help standby counsel and if I May, your Honor, I have the information that your Honor requested regarding Mr. Sammour's e-mail, telephone number and address.

THE COURT:  Is it all legible?

MR. RATAJ:  We rewrote it, Judge.

THE COURT:  Okay, thank you.

MR. RATAJ:  Or Ms. Belcher did I should say.

THE COURT:  All right.  Do we need anything else for the record?

MR. CRAPKO:  Your Honor, there is just one other item that I just want to call the Court's attention to defer to the Court how it wishes to handle it.  In Mr. Sammour's various filings including the lawsuit that he filed in front of Judge DeClercq as well as at least one of the filings in front of Judge McMillion, Mr. Sammour has made what I will characterize as personal comments about the Court and perceived backgrounds and familial ties that the government finds both inappropriate and offensive.  The government's position by bringing these to

the Court and I can point to at least two instances is to protect the record and perhaps have them addressed by the Court.  To the extent Mr. Sammour is trying to raise a recusal issue, I think it's best just to address it and move on from there.

THE COURT:  Is that something you want to address now?

MR. CRAPKO:  Perhaps, your Honor, yes.

THE COURT:  Well, go ahead, do it.

MR. CRAPKO:  So the first issue that I'll raise is in docket number one in case 25-14043, this was the lawsuit that Mr. Sammour filed in front of Judge McMillion.  Mr. Sammour writes among other things and again I'm quoting here that "Goldsmith's admission intersects with the denial, removal change of counsel by mischaracterizing my pro se request as hybrid, Judge Goldsmith under seal concealed my defense and indicated evidence of prejudice.  Judge Goldsmith, a brother of an Israeli sister with family ties in Israel, reinforced the court-appointed attorney's misconduct."  That's one instance that has been filed on the public docket and then there's also in the case in front of Judge McMillion, docket 52 with number, case number 24-20306, Mr. Sammour writes and I quote from this page "I am from Gaza and I need to work because I want to help my starving family in Gaza, this humanitarian plea was met not with empathy, but with retaliation" and then I'll skip down a

little further to the page, "this confirms the Court was made aware of the humanitarian crisis and my urgent need to work, the Court, the judiciary used my statement to justify continued restrictions and psychiatric coercion.  The restriction on employment was not based on law or risk, was retaliatory suppression of speech and identity."

I think that liberally construing pro se filings, this appears to be some sort of request for recusal by the Court, umm, and I place that on the record just so that the Court may address it however it sees fit.

THE COURT:  Well, I didn't hear anything in what you've just said to amount to a request that I recuse myself. I understood that Mr. Sammour was making statements that were in effect stating that I had taken certain positions because of certain relationships or connections that I have or perhaps certain views that he thinks I hold, but he didn't actually seek my recusal.

I can just state on the record that I have no animus or prejudice towards Mr. Sammour.  I make my decisions based on the law and the facts and not based on the ethnicity or religion or place of origin of any litigant.  All that applies as well to Mr. Sammour, so that's all I'm going to say on the record about that.

MR. CRAPKO:  The government's satisfied, your Honor.

THE COURT:  Mr. Sammour, did you want to say

something?

THE DEFENDANT:  Yes, your Honor.  I requested, I made a complaint against, the judiciary complaint against your Honor to the Sixth Circuit Court about a list of things and I requested from the chief judge of the sixth appeals court to you recuse yourself based on things that are already in the courts.  That's one of the things that he said and I listed what she said in the court when she said to your Honor he's protesting, he's posting his protestings, protesting against Israel killing starved children.  I'm among millions of people in the United States.  What does this statement has to do with the motion for a psych exam?  And you heard that, your Honor. Why did she use this, my background what she knows I'm an American citizen originally from Gaza and she knows that you are a Jew and your sister is a principal in a school in Jerusalem and she said that trial, the one in the basket as you said in that public video?  Why does she list those issues in the court and what this has to do with Medicare fraud?

THE COURT:  All right.  Mr. Sammour, you're drifting away from what we're focused on now.  We're not concerned anymore with what your now former counsel said about anything because I've already allowed them out of the case so what she did or said is no longer relevant to your case.  Anything else? Do you have anything else?

THE DEFENDANT:  I just said and you said to me to

stop, so I will stop.  I asked to recused already from the justice, that's why I'm trying to answer --

THE COURT:  I didn't hear what you just said.  Say that again?

THE DEFENDANT:  I'm answering the prosecutor.  He said I did not's ask to recuse.  I did ask it from the chief judge of the Circuit Court in the judiciary complaint that I did.

THE COURT:  All right, if you asked the Court of Appeals, it's up to the Court of Appeals to do whatever they're going to do with whatever --

THE DEFENDANT:  And I'm asking your Honor to at the same time.  I ask you and the things that I did to please if you recuse yourself, I would appreciate it.

THE COURT:  All right.  Then I'll have to file a motion --

THE DEFENDANT:  I did.

THE COURT:  -- you have to follow the rules --

THE DEFENDANT:  I did.

THE COURT:  -- and you'll have to follow the law. There's no motion in front of me.  You have to file it with the Court in writing and then I'll address it when, if and when you file it.

THE DEFENDANT:  It's already, I did, okay, I include it.  It's already did that.

MR. RATAJ:  Judge is talking in this court in front of that judge.

THE DEFENDANT:  Okay, I will do, your Honor.  I will file that.

THE COURT:  All right.  Anything else, Mr. Crapko?

MR. CRAPKO:  No, your Honor.

THE COURT:  Mr. Sammour, anything else?

THE DEFENDANT:  Thank you very much, your Honor.

THE COURT:  All right.  Then I'll thank Mr. Yarbrough and Mr. Thieme for their help this afternoon.  That concludes our session.

(Hearing concluded at 2:27 p.m.)

--    ---    --

C E R T I F I C A T E

I, David B. Yarbrough, Official Court Reporter, do hereby certify that the foregoing pages comprise a true and accurate transcript of the proceedings taken by me in this matter on Tuesday, April 28th, 2026.

5/5/2026                          /s/ David B. Yarbrough

Date                              David B. Yarbrough,
                                  (CSR, RPR, FCRR, RMR)
                                  231 W. Lafayette Blvd.
                                  Detroit, MI  48226