UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

United States of America,

                Plaintiff,             Hon. Mark A. Goldsmith

v.                                No. 23-cr-20062

Ibrahim Sammour,

                Defendant.

---

### THE UNITED STATES OF AMERICA'S OMNIBUS RESPONSE TO IBRAHIM SAMMOUR'S *PRO SE* MOTIONS [ECF NOS. 367, 368, 369, 374]

---

The United States hereby files this consolidated omnibus response to *pro se* Defendant Ibrahim Sammour's: (1) Motion to Remove Court-Appointed Counsel Entirely [ECF No. 367]; (2) Motion for Recusal [ECF No. 368]; (3) Motion to Dismiss Indictment [ECF No. 369]; and (4) Motion for Judicial Review [ECF No. 374].[1]

---

[1] Sammour has also filed three supplemental briefs to his motions. ECF Nos. 375, 381, 383. Per the Eastern District of Michigan Local Rules, absent leave of the court, moving parties may only file a brief supporting their motion and a reply. *See* E.D. Mich. Local R. 7.1. Without leave from the court, there is no right to file a supplemental brief. *United States v. Sanchez*, 2024 WL 2138616, *2 (E.D. Mich. May 13, 2024) (Goldsmith, J.); *see also Albino-Martinez v. Adduci*, 454 F. Supp. 3d 642, 647 (E.D. Mich. 2020) ("Parties do not have a right to file a sur-reply brief under the federal procedural rules or the local rules.") (citation omitted) (collecting

### A.   Sammour's "Motion to Remove Court-Appointed Counsel Entirely" Should Be Denied.

In his first motion, Sammour asks to remove prior court-appointed counsel, Michael Rataj, entirely, including as standby counsel. But the Court has already terminated Mr. Rataj's representation in this case, both orally at the motion hearing addressing Sammour's competency, *see* ECF No. 366, PageID.3219, and in writing in an order following the hearing. ECF No. 376. Sammour's motion to remove Mr. Rataj is therefore based on a mistaken view of the proceedings and in any event, the relief he requests is moot as Mr. Rataj is no longer Sammour's counsel.

The Court did, however, order the Federal Community Defender of the Eastern District of Michigan to appoint standby counsel for Sammour. ECF No. 377. "A defendant's Sixth Amendment rights are not violated when a trial judge appoints standby counsel — even over the defendant's objection — to relieve the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals."

---

cases) (Murphy, J.). Because the Court did not grant leave for the supplemental filings, the Government will not address them in this response. If the Court determines that additional briefing on any of the various arguments raised in the supplemental briefs is necessary, the Government requests an order to respond to those discrete issues.

*McKaskle v. Wiggins*, 465 U.S. 168, 184 (1984). It is unclear whether Sammour

objects only to the appointment *of Mr. Rataj* as standby counsel, or whether he

objects to the appointment of *any* standby counsel.[2] If the former, that issue is moot

as it simply never occurred — Mr. Rataj was never appointed by this Court as

Sammour's standby counsel. If the latter, *McKaskle* makes clear that the Court may

appoint standby counsel, even over Sammour's objections, so long as Sammour

preserves "actual control over the case he chooses to present to the jury." *Id.* at 178.

Indeed, the Court advised Sammour that this would be the case:

> I am going to appoint a standby counsel. I believe the government is
> correct that the standby counsel will serve the valuable purpose of being
> available should Mr. Sammour during the course of trial decide not to
> continue to represent himself or be unable to represent himself, we'll
> have an attorney available to step in and represent him in that
> possibility. *Mr. Sammour doesn't have to consult with him, doesn't
> have to ask him for any assistance*, but he'll be or she will be available
> so that the trial can be completed on a timely basis.

ECF No. 366, PageID.3219 (emphasis added).

---

[2] It is possible that Sammour has changed his views. Since filing his original brief, Mr. James Amberg was appointed as Sammour's standby counsel. Since his appointment, Mr. Amberg has expressed in correspondence with the Government and the Court that he may file a motion to assume Sammour's defense as defense counsel. *See* <u>Exhibit A</u>. The Government awaits this motion and the Court's determination. However, the Supreme Court has made clear: "A defendant does not have a constitutional right to choreograph special appearances by counsel. Once a *pro se* defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced." *McKaskle*, 465 U.S. at 183 (1984).

However interpreted, Sammour's "Motion to remove Court-Appointed Counsel Entirely" should be denied.

**B.      Sammour's Motion for Recusal Due to Judicial Bias and the Appearance of Impropriety Should Be Denied.**

Sammour seeks this Court's recusal based on his subjective impression during a sealed motion for competency examination hearing that the Court accepted certain statements made by former defense counsel without inquiry, creating the appearance that the outcome of the hearing was predetermined.  Much of this hearing was held *ex parte* due to the necessity of discussing aspects of the attorney-client relationship.

28 U.S.C. § 455(a) provides that any judge of the United States shall disqualify himself "in any proceeding in which his impartiality might reasonably be questioned."   "The decision whether a judge's impartiality can 'reasonably be questioned' is to be made in light of the facts as they existed, not as they were surmised or reported."  *Cheney v. U.S. Dist. Court for Dist. Of Columbia*, 541 U.S. 913, 914 (2004) (Scalia, J., writing as a single justice).  "The statute requires a judge to recuse if a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality."  *Ragozzine v. Youngstown State University*, 783 F.3d 1077, 1079 (6th Cir. 2015).   Conclusory, unsupported allegations of bias and subjective beliefs alone are insufficient to demonstrate that the district court is biased.  *See United States v. Troutman*, 2022 WL 18836539, *2 (6th Cir. 2022).

Boiled down, Sammour's grounds for recusal are inadequate, and instead consist of conclusory allegations of bias and Sammour's subjective impressions of what he felt during the hearing. Sammour complains that the Court listened impassively to the arguments advanced by Sammour's prior counsel, ruled on the issues presented, then terminated the hearing. Far from demonstrating an instance where the Court's impartiality might reasonably be questioned, Sammour describes a typical motion hearing in federal court, where the judge listens, sometimes asks questions, does not necessarily comment to indicate real-time agreement or disagreement with arguments advanced by the parties, and then ultimately rules. Nothing in Sammour's motion would cause a reasonable objective person to question the Court's impartiality. And in any event, the Court has already clearly stated that it makes decisions based on the facts and law and holds no animus or bias toward either party:

> I understood that Mr. Sammour was making statements that were in effect stating that I had taken certain positions because of certain relationships or connections that I have or perhaps certain views that he thinks I hold …. I can just state on the record that I have no animus or prejudice towards Mr. Sammour. I make my decisions based on the law and the facts and not based on the ethnicity or religion or place of origin of any litigant. All that applies as well to Mr. Sammour, so that's all I'm going to say on the record about that.

ECF No. 366, PageID.3229.

Sammour's motion for recusal should also be denied.

**C.      Sammour's Motion to Dismiss the Indictment for Failure to State an Offense Should be Denied.**

Sammour's third motion asks the Court to dismiss the indictment in its entirety because Sammour believes the Government's theory of Medicare fraud is defective. Sammour takes issue with a variety of CMS rules, including a "teach the family" policy, a specific illustrative example apparently taken from the CMS manual regarding a hypothetical patient with pneumonia, and general assertions that the Government will not be able to prove its case at trial and/or that the Government's case is "logically impossible."  ECF No. 369, PageID.3240-42.

> 1. Sammour's Challenge to the Probable Cause Determination Underlying the Indictment is Improper.

"The institution of the grand jury is deeply rooted in Anglo-American history." *United States v. Calandra*, 414 U.S. 338, 342 (1974).  The grand jury is responsible both for determining whether there is probable cause to believe that a crime has been committed and for the protection of citizens against unfounded criminal prosecutions. *Id.* at 343.  "A grand jury proceeding is not an adversary hearing in which the guilt or innocence of the accused is adjudicated.  Rather, it is an ex parte investigation to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person." *Id.*, 414 U.S. at 343-344.

"[I]t has long been settled that 'the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer.'" *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002) (citing *Ex parte United States*, 287 U.S. 241, 250 (1932)).  "[A]n indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence[.]" *Calandra*, 414 U.S. at 345.

"It would run counter to the whole history of the grand jury institution" to allow defendants "to challenge indictments on the ground that they are not supported by adequate or competent evidence." *Costello v. United States*, 350 U.S. 359 (1956). "Motions to quash indictments based upon the sufficiency of the evidence relied upon by the grand jury were unheard of at common law in England." *United States v. Williams*, 504 U.S. 36, 53 (1992).

> A complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation was 'incomplete' or 'misleading.'"  Our words in *Costello* bear repeating:  Review of facially valid indictments on such grounds 'would run counter to the whole history of the grand jury institution[,] [and] [n]either justice nor the concept of a fair trial requires [it].

*Id.* at 55 (1992) (citing *Costello*, 350 U.S. at 364).

Sammour's various challenges to the sufficiency of the evidence against him such as his view that because he was not directly paid by Medicare, he cannot be

found guilty of a conspiracy to commit health care fraud, *id.* at PageID.3243, his alleged lack of a financial motive to commit a crime, *see* PageID3243-3247, and the credibility or reasons for certain witness statements, PageID.3246-47, are not properly raised in a motion to dismiss the indictment for failure to state a claim. These arguments (such as they are) go to the weight of the government's evidence, credibility of its yet-uncalled witnesses, and evidence and cross examination that may be offered at trial.  But Supreme Court precedent squarely forecloses Sammour from challenging the sufficiency, adequacy, or competency of the evidence supporting the indictment.  Sammour's remedy is a trial, which is scheduled for October 6, 2026.  His motion challenging whether there is probable cause or sufficient evidence to convict is inappropriate and must be denied.

### 2.  The Indictment Sufficiently States the Charge Offense.

To the extent Sammour challenges the facial legal sufficiency of the indictment, Federal Rule of Criminal Procedure 7(c)(1) requires that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]"  Fed. R. Crim. P. 7(c)(1). An indictment is sufficient if it: "(1) contains the elements of the offense charged, (2) fairly informs a defendant of the charge against which he must defend, and (3) enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Titterington*, 374 F.3d 453, 456 (6th Cir. 2004) (citing *Hamling v. United States*, 418

U.S. 87, 117 (1974) (quotation marks omitted)).  "On a motion to dismiss, the Court must view the Indictment's factual allegations as true and must determine only whether the Indictment is "valid on its face."  *United States v. Campbell*, No. 02-80863, 2006 WL 897436, at *2 (E.D. Mich. April 6, 2006) (Edmunds, J.).  *See also United States v. Reed*, 77 F.3d 139, 140 n. 1 (6th Cir. 1996) (en banc) ("[W]e read the indictment as a whole, accept the factual allegations as true, and construe those allegations in a practical sense with all of the necessary implications.").  "Courts utilize a common sense construction in determining whether an indictment sufficiently informs a defendant of an offense."  *Allen v. United States*, 867 F.2d 969, 971 (6th Cir. 1989)

"The indictment need only set forth elements that, if proven, constitute a violation of the relevant statute."  *United States v. Anderson*, 605 F.3d 404, 412 (6th Cir. 2010).  "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished."  *United States v. Heller*, 579 F.2d 990, 999 (6th Cir. 1978).

Here, Sammour is charged in Count 1 with health care fraud conspiracy, in violation of 18 U.S.C. § 1349.  The Indictment alleges that from at least in or around January 2016 through February 2023, Sammour and his co-conspirators agreed to

9

execute a scheme and artifice to defraud Medicare to obtain Medicare money via false pretenses. ECF # 1, PageID.9. This included submitting false and fraudulent claims to Medicare that were procured by kickbacks and bribes, submitting claims that were for medically unnecessary services, claims that were ineligible for Medicare reimbursement, claims for services that were not provided as represented, and the concealment of false and fraudulent claims to Medicare. *Id.* at PageID.9-10. The scheme operated through six home health care agencies ("HHAs"), each owned or controlled by Walid Jamil and Jalal Jamil. Walid and Jalal Jamil's ownership was concealed through the submission of fraudulent enrollment materials to Medicare that failed to disclose the true ownership and control of the HHAs. Part of the scheme involved obtaining Medicare beneficiaries through the payment of illegal kickbacks and bribes. Another part of the same scheme involved submitting claims for services that were medically unnecessary, ineligible for Medicare reimbursement, and/or not provided as represented. All through the scheme, the purpose was the same — obtaining Medicare money through false and fraudulent pretenses for distribution among the co-conspirators. *Id.* at PageID.9-10.

Ibrahim Sammour was a nurse for the HHAs during the scheme. Together with his co-conspirators, he falsified, fabricated, and altered medical records, including home health certifications and plans of care, nursing visit notes, evaluations, re-certifications, and discharges of Medicare beneficiaries to support

10

claims to Medicare for home health care services that were obtained through illegal kickbacks and bribes, medically unnecessary, and/or that were never provided. *Id.* at PageID.12. His co-conspirators then submitted these false and fraudulent claims for the Jamil HHAs to Medicare in an amount exceeding $50 million, approximately $43 million of which was paid by Medicare to the Jamil HHAs. *Id.*

Count 1 therefore lays out the elements of conspiracy to commit health care fraud and details the scheme and conspiracy in which Sammour is charged in sufficient detail for him to understand the charge which he is to defend. *United States v. Titterington*, 374 F.3d 453, 456 (6th Cir. 2004). No more is required by the rules or the law. *See Reed*, 77 F.3d 139, 140 n. 1 (6th Cir. 1996) (en banc) ("[W]e read the indictment as a whole, accept the factual allegations as true, and construe those allegations in a practical sense with all of the necessary implications."). In his motion, Sammour does not indicate that he is confused as to what crime he has been charged with; he merely indicates a host of disagreements with the Government's case. He is entitled to present his disagreements, within the bounds of the law and the rules of evidence, at trial, at which point the jury will determine whether the Government has proven its case beyond a reasonable doubt. His request for the wholesale dismissal of the indictment is improper and must be denied.

11

## D.    Sammour's Motion for Judicial Review Should Be Denied.

Sammour's final motion is captioned as a "Motion for Judicial Review" and seeks various relief, including dismissal of the indictment, vacation of the Court's scheduling order until after the Court has conducted an undefined and freewheeling analysis of a variety of issues Sammour attempted to raise *pro se* while he was still represented by counsel, and the award of  monetary damages for "the pain and suffering endured." *See* ECF No. 374, PageID.3261.  Sammour also re-raises similar arguments to those brought forth in his motion to dismiss the indictment, and motion for removal of standby counsel.  *Id.*; *see also id* at. PageID.3263-64.

Sammour challenges the government's ability to present evidence of CMS rules and regulations governing Medicare, and asserts that such rules, alone, are not sufficient to impose criminal liability.

Of course, Medicare's civil rules, regulations, ethical standards, and standards of care for providing service are not criminal statutes.  However, Medicare and Medicaid's rules and regulations, ethical standards, and standards of care are relevant in determining whether Sammour acted with criminal intent to defraud Medicare, which is a crime.  The jury in this case will be asked whether Sammour knowingly and willfully executed and agreed to execute a scheme and artifice to defraud Medicare by the means of materially false and fraudulent pretenses,

12

representations, and promises for the purpose of obtaining Medicare funds. *See* ECF No. 1 at PageID.13-16. This is the criminal activity with which he is charged.

As part of its case, the Government will introduce testimony and evidence explaining to the jury how Medicare works in the context of home health services. For example, a Medicare witness is anticipated to testify regarding Medicare coverage guidelines and beneficiary eligibility requirements for home health care services. The jury will also receive evidence regarding what types of treatments qualify for home health care reimbursement, and the role of nurses in implementing a start of care for Medicare beneficiaries who are to receive home health services. The Medicare witness will also testify regarding illegitimate claims, namely, that Medicare will not pay for home health care visits that are not medically necessary (such as where the beneficiary is not actually home bound), where services were not actually provided to beneficiaries as represented to Medicare, or where claims are based on falsified documentation. Put differently, Medicare rules and regulations are relevant to explaining to the jury what constitutes a false and fraudulent representation to Medicare in the context of a health care fraud conspiracy.

For example, if an individual (such as Sammour) falsifies documentation indicating that a start of care or a nursing visit was performed on a given date, and the evidence reveals that such a start of care or nursing visit never happened because the individual was not even in the country, Medicare will not reimburse that claim.

13

In other words, Medicare doesn't willingly pay for falsified visits, and creating false documentation to support a lie to Medicare to gain payment for visits that never happened is a fraudulent representation in an effort to obtain Medicare money through false and fraudulent means. As another example, if an individual (such as Sammour), repeatedly, knowingly, and willfully asserts that patients are "homebound" when they do not in fact meet the Medicare criteria for home health services,[3] such assertions are further evidence of an intent to defraud as they are a knowing and willful attempt to obtain Medicare money through false and fraudulent representations.

Sammour cites a variety of cases that do not illuminate the issues in his criminal case. For example, in *Azar v. Allina Health Services*, 587 U.S. 566 (2019), the Court confronted a question whether the Government could retroactively reduce payments to hospitals serving low-income patients without following the public notice and comment procedure specified by statute. But this opinion deals exclusively with the requirement that changes to Medicare's rules regarding hospital

---

[3] For example, the Government will also present evidence of Sammour's knowledge of Medicare rules and regulations and his idiosyncratic disagreement with those rules and regulations. In an unprotected interview with government agents, Sammour admitted that he is aware of the Medicare eligibility definition for homebound, but simply disagrees with it. Whether Sammour has objections to Medicare's definitions is beside the point — if he is aware of the rules and regulations and deliberately lies to circumvent those rules and regulations to obtain Medicare money, that is a fraudulent representation.

payments needed to follow a procedure involving public review and comment of the proposed changes.  Nothing in *Azar* sheds light on criminal liability under 18 U.S.C. § 1349, the statute Sammour is charged with violating.

Similarly, Sammour cites *Jimmo v. Sebelius*, No. 11-cv-17, 2011 WL 5104355 (D. Vt. Oct. 25, 2011), as "directly support[ing]" Sammour's "RN-SOC statutory argument." *Jimmo* is an unpublished district court civil case from Vermont dealing with whether a complaint filed by several Medicare beneficiaries should be dismissed for lack of subject matter jurisdiction and failure to state a claim.  The district court held that as to one of the plaintiffs, she had not satisfied the pertinent exhaustion requirement, and as to an organizational plaintiff, the plaintiff had not sufficiently alleged subject matter jurisdiction, but would be granted leave to amend. *Id.* at 18.   The remainder of the opinion dealt with whether the complaint had stated a claim under Fed. R. Civ. P. 12(b)(6).  The district court analyzed the amended complaint and concluded that it stated a plausible claim for relief under the *Iqbal/Twombley* standard.  So it denied the defendant's motion to dismiss.  After this decision, it appears that the case proceeded through discovery and ultimately resolved via settlement, at which point a judgment was entered.   *See Jimmo v. Sebelius*, No. 11-cv-17 (D. Vt.), ECF Nos. 92, 93. Notwithstanding Sammour's continued assertions, nothing in *Jimmo* bears on Sammour's criminal liability in this case.

15

None of Sammour's hodgepodge citation of other Supreme Court cases is relevant here. *Christensen v. Harris County*, 529 U.S. 576 (2000) is a Fair Labor Standards act case that deals with an employer's ability to mandate that its employees use compensatory time. *United States v. Mead Corp.*, 533 U.S. 218 (2001) dealt with whether a tariff classification ruling by the United States Customs Service deserved *Chevron* deference. *Kisor v. Wilkie*, 588 U.S. 558 (2019), dealt with the Department of Veteran Affairs' interpretation of its own agency rule, and declined to overrule two prior cases on the applicability of agency deference. *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) is a Fair Labor Standards Act case from 1944 that held that "waiting time" can constitute "working time." And *Gonzales v. Oregon*, 546 U.S. 243 (2006) dealt with whether the Controlled Substance Act authorized the Attorney General to prohibit doctors from prescribing drugs for use in physician-assisted suicide. Each of these cases dealt with unique issues regarding a varied scope of federal law; not a single one dealt with the issues presented in Sammour's case, namely, whether he knowingly and willfully joined a conspiracy and scheme to defraud Medicare.

Sammour's motion for judicial review should also be denied.

## CONCLUSION

For the foregoing reasons, each of Sammour's *pro se* motions found at ECF 367-369, and 374 should be denied.

16

Dated:  June 3, 2026

Respectfully submitted,

JEROME F. GORGON JR.
United States Attorney

*s/Jeffrey A. Crapko*
JEFFREY A. CRAPKO
JONATHON E. HITZ
Trial Attorneys
U.S. Dept. of Justice
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3211
(202) 445-9832
Jeffrey.Crapko@usdoj.gov

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 6, 2026, I electronically filed the foregoing

document with the Clerk of the Court using the ECF system which will send

notification of such filing to counsel for Defendant.

s/Jeffrey A. Crapko
JEFFREY A. CRAPKO
Trial Attorney
U.S. Dept. of Justice
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3211
(202) 445-9832
Jeffrey.Crapko@usdoj.gov